[Cite as *Chaney v. Chaney*, 2012-Ohio-626.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CHRISTINA M. CHANEY | : | |
| | : | Appellate Case No. 24880 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 99-DR-2017 |
| v. | : | |
| | : | |
| TIMOTHY W. CHANEY | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of February, 2012.

. . . . . . . . . . .

CAROL J. HOLM, Atty. Reg. #0014613, 130 West Second Street, Suite 1010, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

JENNIFER J. WALTERS, Atty. Reg. #006610, 80 South Plum Street, Troy, Ohio 45373
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Appellant ("Father") appeals from the trial court's denial of his motion for reallocation of parental rights with regard to the parties' child, J.C.

**{¶ 2}** In his sole assignment of error, Father contends the trial court "erred against the weight of the evidence and abused its discretion by determining that custody should not be reallocated" from Appellee ("Mother") to him.

**{¶ 3}** The record reflects that Father and Mother divorced in 2000. At that time, Mother received legal custody of their three children. Thereafter, Father twice sought a change of custody. The first attempt was resolved by a 2004 agreed order allowing Mother to retain custody. The second attempt was resolved in 2005 when the trial court found that the benefits of a change did not outweigh the harm.

**{¶ 4}** Father filed his most recent custody motion on July 1, 2010. That motion pertained only to J.C. as the parties' other two children were emancipated. When Father filed his motion, Mother and J.C. were residing in a small house in Caneyville, Kentucky. Father was residing in a house in West Milton with his new wife and two children. Father's motion proceeded to a January 31, 2011 hearing before a magistrate. Following the hearing, the magistrate overruled the motion. Father filed objections and supplemental objections. The trial court overruled them in an October 7, 2011 decision and judgment. Based on its independent review of the record, the trial court found that the magistrate's decision was "well reasoned and supported by the facts presented at trial." This appeal followed.

**{¶ 5}** The facts pertinent to Father's motion are set forth in the magistrate's decision. In his objections, Father did not dispute the magistrate's factual findings, which are supported by the hearing testimony. He argued instead that the magistrate misapplied those facts to the law. Therefore, for purposes of our analysis, we will accept the magistrate's factual findings, which are as follows:

Mother last worked in 2005, when she was terminated from a position as a clerk but she subsequently received unemployment. Mother has lived at her current address since April or May 2010. Mother is no longer living with her boyfriend William Perry. Mother's current residence was without running water for about a day in April due to a burst pipe, which was repaired within a day or so. As reflected in the family investigation, mother's residence was visited by an investigator from Kentucky. Mother's previous residence was substantially larger, and because she has moved into a smaller residence the furniture and items from the previous residence [are] causing some clutter in the current residence.

One of father's primary issues with mother is the school absences of [J.C.]. Father feels that this issue has been raised again and again through court proceedings. Father agreed to not change custody (by agreed order filed September 9, 2004) after raising the issue, and later the court recognized the issue but found that the benefits of a change did not outweigh the harm of a change (by magistrate decision and permanent order filed October 12, 2005). Mother admitted that she had attendance issues with the older children, and that she bore primary responsibility for [J.C.'s] attendance issues. Mother testified that she has made substantial changes in her household routine (such as bedtimes and getting [J.C.] medication for her cramping) and has changed other aspects of her life (such as moving and increasing her transportation availability) to address the attendance issue. This is corroborated by the family

investigator, who upon reviewing school records noted that there was a substantial decrease in the unexcused absences. At least one of the remaining unexcused absences was in error, and mother credibly testified that others were due to [J.C.] not turning in the excuse notes she gave to [J.C.]. [J.C.] is in the process of completing a program designed to combat truancy issues, which the other children also completed.

Mother is receiving food stamps and is being supported by maternal grandmother (who owns the residence and helps with mother's expenses). Mother is looking for employment from time to time and will be going back to school in March to become a phlebotomist. The school schedule should not interfere with getting [J.C.] to school or picking her up afterwards if necessary. Mother admits that she and father have "very limited communication." Mother also admitted that [J.C.] has been a conduit for information between the parties.

[G.C.], who is 21 years old and is now serving in the United States Navy, went out of his way to make arrangements to testify. [G.C.] criticized mother for not doing enough to make him attend school and for easily giving excuse notes. [G.C.'s] personal motivation for testifying appears to be his view that [J.C.] is unlikely to have a future in her adult life if she stays in the Kentucky area. [G.C.] described the trash and clutter at mother's residence, but admitted that it had been about three years since he was last at her home. [G.C.'s] wife, [J.], also testified and corroborated [G.C.'s] testimony that mother was more likely to talk negatively about father than the reverse.

However, [J.] was not as negative about the conditions of mother's residence and in general was very complementary about father and his household.

Chris Tracy, who conducted the family investigation, noted the importance of the school attendance issue. However, Mr. Tracy found that it was significant that mother had taken concrete action to address the issue and that it had (so far in this school year) led to a notable drop in [J.C.'s] unexcused absences. Mr. Tracy noted that one of the recent unexcused absences was due to his family investigation. The guidance counselor at [J.C.'s] school, Nancy Sims, recommended that [J.C.] receive counseling to deal with her divorce-related stress and found that [J.C.] consistently spoke favorably about her father while maintaining she wanted to stay with mother. During his interviews with [J.C.], Mr. Tracy found that [J.C.] was bonded to both parents and had positive interactions in both households. However, Mr. Tracy noted that [J.C.] preferred the more rural area in Kentucky as well as the fact that she has friends and family there. [J.C.] also reported to Mr. Tracy that there has been friction between her and her father when father has pressed the issue of her coming to live with him.

In his testimony, father covered the concerns noted above regarding the school attendance issue as well as his belief that mother is not taking enough of a role in actively supervising [J.C.]. Father pointed to a trip to the fair this past summer which in his mind had too little adult supervision over a group of children (including [J.C.]). Father closely monitors what [J.C.] does online, in

part due to some troublesome encounters with strangers online. However, father has taken that a step further, as indicated by the exhibits, and has actively monitored [J.C.'s] online conversations with mother (at least through Facebook). Father also complained that mother only does well when court proceedings are pending. Father agrees that mother is doing the transportation for his parenting time but was not happy that she often dropped [J.C.] off later than he would like (such as 9 p.m. or as late as 1 a.m.).

{¶ 6} Based on the foregoing findings, the magistrate opined that "[i]n an abstract sense, father's current household appears to be a better environment for [J.C.]." The magistrate added, however, that "moving [J.C.] to the 'better' household would come at the cost of removing her from the region she has known since a very young age, as well as from her long-term friends and family." The magistrate also noted that "[m]oving [J.C.] would go against her expressed wishes and concerns, which given her age and ability to communicate are entitled to some weight." With regard to J.C.'s absences from school, the magistrate stated: "It is true that school absences remain a concern, but it must also be noted that despite these issues [J.C.] has maintained a reasonable level of academic achievement and that mother has taken concrete steps that also appear to have improved that situation." The magistrate then expressed general concern about "the lack of communication between the parties, mother's greater inclination to speak badly of father, [and] father's inappropriate monitoring of [J.C.'s] communications with mother." After taking all of the foregoing matters into consideration, the magistrate concluded that "the benefits of a change of custody do not outweigh the detriment caused by a change of custody, and that custody should not be changed."

{¶ 7} In his objections and supplemental objections, Father challenged the magistrate's weighing of the evidence. According to Father, the undisputed facts demonstrated that a change of custody was in J.C.'s best interest and that the harm to be caused by such a change was outweighed by the advantages to the child. The trial court disagreed. In overruling Father's objections, the trial court noted that he filed prior motions for a change of custody based on "the child's poor attendance and performance at school, plaintiff's interference with defendant's parenting time and basically a very poor physical home environment." The trial court recognized that Father's current motion was based on these same issues. It then cited testimony indicating (1) that Mother's home was adequate and did not warrant further investigation, (2) that J.C.'s school attendance had improved and Mother had taken steps to remedy the problem, and (3) that the underlying causes for interference with Father's visitation had been addressed. The trial court also noted J.C.'s expressed desire to continue residing with Mother in Kentucky. As a result, and based on its independent review of the record, the trial court agreed with the magistrate's decision that Mother should retain custody.

{¶ 8} On appeal, Father challenges the trial court's weighing of the evidence. As he did in his objections to the magistrate's ruling, Father concedes that his "concerns focus primarily on educational issues." He asserts that J.C. is not receiving an adequate education and that Mother is largely to blame. Father also points to testimony that J.C. interacts well with him and his family. He notes too that J.C. has relatives near him and that Mother occasionally has failed to facilitate his parenting time. Father also contends the trial court placed too much emphasis on J.C.'s wishes.

{¶ 9} Upon review, we find Father's arguments to be without merit. We

review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion. *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*. "'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.'" *Id.* at ¶ 8, quoting *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 10}    In order to prevail on his motion, Father needed to demonstrate that (1) there had been a change in the circumstances of J.C. or Mother, (2) modification of the existing custody decree was necessary to serve J.C.'s best interest, and (3) the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to J.C. *See* R.C. 3109.04(E)(1)(a). The magistrate found that Father failed to satisfy the third requirement, and the trial court agreed with the magistrate's determination. We see no abuse of discretion.[1]

{¶ 11}    Despite Father's concerns, the record contains evidence that J.C. is performing relatively well in school. The record also contains evidence that Mother has taken

---

[1]The magistrate also appeared to question whether a "change in circumstances" existed but did not make an express finding. We need not address that issue, however, because the lower court did not abuse its discretion in finding the third requirement not met. *See, e.g.*, *Musgrove* at ¶ 36 (noting that a trial court cannot modify a prior custody order unless all three requirements of R.C. 3109.04(E)(1)(a) are met).

steps to remedy J.C.'s absences and that her efforts are working. The record further indicates that Mother is successfully supporting J.C. and that her home is adequate. The record also supports the trial court's finding that Mother has an adequate automobile to transport J.C. for visitation. Finally, the trial court was entitled to give considerable weight to the wishes of J.C., who was fourteen years old at the time of its decision. Although Father disagrees with the trial court's weighing of the evidence, its decision is supported by a sound reasoning process and is neither arbitrary nor unconscionable. As a result, we find no abuse of discretion. Father's assignment of error is overruled.

{¶ 12}     The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

Carol J. Holm
Jennifer J. Walters
Hon. Denise L. Cross