[Cite as *Cure v. Cure*, 2012-Ohio-2966.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

ANDREW V. CURE                                  :

     Plaintiff-Appellee                        :    C.A. CASE NO.    2011 CA 73

v.                                              :    T.C. NO.    06DR890

MARY M. CURE                                    :    (Civil appeal from Common
                                         Pleas Court, Domestic Relations)

     Defendant-Appellant                       :

                                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___29th___ day of ____June____, 2012.

. . . . . . . . . .

TERRI L. PARMLEY, Atty. Reg. No. 0040653, 333 N. Limestone Street, Suite 205, Springfield, Ohio 45503
        Attorney for Plaintiff-Appellee

L. ANTHONY LUSH, Atty. Reg. No. 0046565, 2160 Kettering Tower, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**  Mary M. Cure appeals from a judgment of the Common Pleas Court

of Clark County, Domestic Relations Division, which granted Andrew Cure's motion for a reallocation of parental rights of their minor son, named Mr. Cure as the residential parent, found Ms. Cure in contempt of court, and imposed a suspended sentence on the condition that Ms. Cure comply with the court's orders in the future.

{¶ 2}    For the reasons discussed below, we conclude that the trial court did not abuse its discretion in modifying the Cures' parental rights or in finding Ms. Cure in contempt.

*Facts & Procedural History*

{¶ 3}    The Cures were married for less than three years and were separated multiple times before their divorce in 2008.  They had one son, who was born prior to their marriage and was five years old at the time of the divorce.  Pursuant to the divorce decree, Ms. Cure was named as the residential parent, and Mr. Cure was awarded visitation.  After the divorce, the parties lived near one another in Clark County.  Ms. Cure was also the residential parent of another child, a daughter from a previous marriage; the daughter's father also had visitation and lived nearby.

{¶ 4}    In June 2011, Ms. Cure moved to a home she had recently purchased in Lebanon, Ohio.  She lived there with her boyfriend, John Haynes, who was a Hamilton County Sheriff's Deputy and was required to live within 30 miles of the Hamilton County Justice Center.  At the time of Ms. Cure's move, Mr. Haynes was married to Stacy Haynes, and no complaint for divorce had been filed.  Ms. Cure's residence in Lebanon was more than an hour away from Mr. Cure's residence, which made it difficult for him to exercise his mid-week visitation with their son, who was 8 years old.

**{¶ 5}** Mr. Cure filed motions for reallocation of parental rights and to show cause why Ms. Cure should not be held in contempt. The motion for reallocation of parental rights focused on the instability created by Ms. Cure's dating habits and Mr. Cure's concern about his son's exposure to Mr. Haynes; while the motion was pending, the court ordered that Mr. Haynes should not spend any unsupervised time alone with the child. The motion for a finding of contempt initially focused on Ms. Cure's failure to inform Mr. Cure of the move, but, as the case unfolded, the court also considered Mr. Cure's claim that Ms. Cure was in contempt for allowing their son to be alone with Mr. Haynes, contrary to the court's interim order. Brian Gartin, the father of Ms. Cure's daughter, also filed a motion for reallocation of parental rights (Case No. 02-DS-0077). By agreement of the parties, the motions of Mr. Cure and Mr. Gartin were heard together by the trial court.

**{¶ 6}** The court held a hearing on August 2, 4, 16 and 18, 2011. The trial court granted Mr. Cure's motion for reallocation of parental rights, named Mr. Cure the residential parent, set visitation for Ms. Cure, and ordered Ms. Cure to pay child support. It also found Ms. Cure in contempt of court for permitting the Cures' son to be in the presence of Mr. Haynes, unsupervised. The court imposed a 30-day jail sentence for the contempt, but suspended the sentence on the condition that Ms. Cure comply with the court's continuing order that the child not be left alone with Mr. Haynes. Mr. Gartin's motions for reallocation of parental rights and for a finding of contempt were also granted, but those judgments are not relevant to this appeal.

**{¶ 7}** Ms. Cure appeals, raising three assignments of error. The first two

assignments relate to separate prongs of the standard for reallocation of parental rights; as such, we will address them together.

### *Reallocation of Parental Rights*

{¶ 8}    Ms. Cure's first and second assignments of error state:

**The trial court abused its discretion in finding that there was a substantive change of circumstances.**

**The trial court next abused its discretion in finding that there was a substantial change of circumstances and it would be in the best interest of the child to reallocate custody.**

{¶ 9}    Ms. Cure argues that the trial court did not properly find a change of circumstances or that it would be in the best interest of the child to change custody, as required to reallocate parental rights.

*A.   Standard of Review*

{¶ 10}    In order to prevail on a motion for reallocation of parental rights, the movant must demonstrate that (1) there has been a change in the circumstances of the child or the residential parent, (2) modification of the existing custody decree is necessary to serve the child's best interest, and (3) the harm likely to be caused to the child by a change of environment is outweighed by the advantages of the change of environment.   R.C. 3109.04(E)(1)(a); *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012-Ohio-626, ¶ 10.

{¶ 11}    A change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order.  *Davis v. Flickinger,* 77 Ohio

St.3d 415, 418, 674 N.E.2d 1159 (1997). "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Id.* at paragraph two of the syllabus. We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion. *Chaney* at ¶ 9; *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7.

### B. *Evidence Presented at the Hearing*

{¶ 12} Ms. Cure's testimony at the hearing established that she had been romantically involved and had lived with several men during her son's life other than his father, that she had lived with her son at five different residences, and that her son had attended three different schools between kindergarten and third grade. She claimed that she and Mr. Haynes were engaged to be married and that he was the "man of her dreams." She also expressed her belief that her move to Lebanon was good for her son because Lebanon's school district was better than their previous school district. She believed, without reservation, that she was "the better parent" and the "most stable parent" for her son.

{¶ 13} Ms. Cure's boyfriend, Mr. Haynes, testified about his close relationship with Ms. Cure, his belief that they would stay together long-term, and the close relationship that he and Ms. Cure have with one another's children. However, he contradicted Ms. Cure's claim that they were engaged, pointing out that he was still married; he also claimed that he did not want to marry Ms. Cure until he could afford to pay for the wedding and a ring himself, because she had paid for her previous wedding.

{¶ 14}   Mr. Haynes also testified about his employment with the Hamilton County Sheriff's Department, which requires him to live within 30 miles of the Hamilton County Justice Center in downtown Cincinnati.  (Ms. Cure's house in Lebanon is within this distance, but her residence in Clark County was not.)  Mr. Haynes testified that he works on the bomb squad and that his skills were not easily transferrable to other sheriffs' or police departments, because most departments do not maintain their own bomb squad.  When asked about disciplinary and legal issues related to his employment, Mr. Haynes admitted involvement in an incident for which he was disciplined and was being sued; the incident involved the excessive use of force against a motorist who was tazed and forcefully removed from a car while having a diabetic seizure, resulting in injury to the motorist.  Mr. Haynes denied that there were other disciplinary issues related to his employment and that other deputies were reluctant to work with him because of the likelihood of a lawsuit arising from his behavior.

{¶ 15}   Mr. Haynes's wife, Stacy, also testified; at the time of the hearing, the Hayneses were in the process of divorcing after 18 years of marriage.  Mr. and Mrs. Haynes testified at length about events that occurred during the months preceding their separation, and their testimony was often in conflict.  For example, Mr. Haynes claimed that he had moved into the basement and that he and his wife had been living "separately" beginning in early 2010; thereafter, he had an affair with a fellow police officer, and then began his relationship with Ms. Cure in the spring of 2010.  Mrs. Haynes testified, however, that Mr. Haynes never moved into their basement, that she was unaware of problems in their marriage until May 2010, around Mother's Day, when the officer

involved with Mr. Haynes came to their home, and that, although they were separated, she (Mrs. Haynes) and Mr. Haynes continued to work on reconciling throughout the summer of 2010. By this time, however, Ms. Cure had purchased the house in Lebanon, and Mr. Haynes was living there. Also, in the summer of 2010, Mr. Haynes paid $1,800 toward the mortgage and utilities at Ms. Cure's new home in Lebanon, while he was in arrears on his spousal support and child support payments to Mrs. Haynes. Mrs. Haynes had two young children and was not employed outside the home, and the Hayneses' house ended up in foreclosure; notwithstanding the court-ordered support, Mr. Haynes believed that Mrs. Haynes should have gotten a job to help with the house payments and her other expenses.

{¶ 16}　According to Mrs. Haynes, Mr. Haynes masturbated while looking at pornography on their home computer with their young children nearby; he did not think this behavior was problematic, because he did not think the children were capable of understanding it. Mr. Haynes stored pornographic pictures on the computer, including, Mrs. Haynes eventually discovered, pictures of himself engaged in sexual activities with other women; in one of these pictures, he was wearing a blue wristband issued to Mr. and Mrs. Haynes while she was in the hospital when their twins were born. Mr. Haynes denied that he was the man in any of the pornographic pictures on the computer. Mr. Haynes admitted that he had had sexual relations with one of his girlfriends, the police officer, at the marital home before he was separated from Mrs. Haynes.

{¶ 17}　Mr. Haynes claimed that his frequent visits to pornographic websites and, particularly, websites of escort services, were related to his employment, through which he

was responsible for identifying and arresting prostitutes; although some of the escort services operated outside of his jurisdiction, he claimed that they bordered on his jurisdiction. He also claimed that his practice of masturbating to pornography was related to his wife's infertility treatments, for which he was required to collect semen, but Mrs. Haynes testified that the infertility treatments did not require Mr. Haynes to collect semen at home. At one point in his testimony, Mr. Haynes admitted to having had one to ten affairs during his marriage, although his testimony established at least two affairs – with a fellow officer and Ms. Cure – toward the end of his marriage; at another point, he stated that he told Ms. Cure of five affairs during his marriage and that, in his deposition, he "guess[ed] it could have been" 200. Mr. Haynes also admitted that he had been alone with Ms. Cure's son and daughter in recent months, notwithstanding the court's order that any time he spent with them should be supervised. He believed that, because Ms. Cure had been close-by, his conduct had not violated the order.

{¶ 18} Mrs. Haynes described Mr. Haynes as exhibiting unreasonable or irrational behavior and stated that, although he could be "wonderful" 95% of the time, the other 5% was "so bad that it invaded [her] whole existence." She testified that he used profanity toward their children (twins, who were age three at the time of the hearing), and that he had in the past forced food into the children's mouths that was either too hot or too large or thick for them to safely eat. She did not believe, however, that he was a danger to her own children or to Ms. Cure's children.

{¶ 19} Mr. Cure testified that he had resided with his fiancee, Mirandia McCoy, for four years, and that he had never cheated on her or separated from her during that time.

He described being active in his son's sports, school conferences, and doctor's appointments, stated that his son has good friends in the neighborhood, and that his son was well-adjusted.

{¶ 20} Mr. Cure testified that Ms. Cure's move to Lebanon made it very difficult for him to exercise his mid-week visitation, because the length of the drive (one hour and 15 minutes each way) and the son's need to be at school early the next day made it very tiring for his son to come to his house on a weeknight. For this reason, Mr. Cure had not been taking his son to his Clark County home for mid-week visitation since Ms. Cure's move.

{¶ 21} With respect to Ms. Cure, Mr. Cure expressed concern about the "lack of continuity" in his son's life while living with Ms. Cure, because his son had experienced four moves and three schools in a four-year period. He also expressed his belief that this pattern would continue and that the "volatility * * * is going to blow up on" his son. He claimed that both Ms. Cure and Mr. Haynes had volatile personalities, and he expressed displeasure that Ms. Cure introduces their son to the men she is dating within weeks of the start of the relationship, and even moves in with them. Mr. Cure testified that his son is "leery" and "afraid" of his mom sometimes, because of her yelling and his fear of getting in trouble. Mr. Cure also stated that Ms. Cure is not forthcoming with him about information regarding their son, such as health issues, and that she does not promote a positive relationship between father and son.

{¶ 22} Mr. Cure admitted that, on one occasion when Ms. Cure's older daughter was at their home, he held the girl by the face to get her attention, which apparently scared

the child and was a memorable event for her. Mr. Cure stated that he felt badly that the incident had scared the girl, but he had seen Ms. Cure do the same thing and believed it was a way to get the child to listen to him.

{¶ 23} Ms. Cure denied that Mr. Cure was active in their son's life, and claimed that he only visited with their son 70-80% of the time that he was entitled to do so. She also testified to her belief that Mr. Cure frequently leaves their son with Mr. Cure's mother (the son's grandmother) during his visitation.

{¶ 24} The trial court also considered the report of the guardian ad litem, but the guardian ad litem did not testify at the hearing. In his report, the guardian ad litem recognized that Ms. Cure's choices in relationships "have not always been good" and that it would have been more reasonable for her to proceed more slowly in her relationship with Mr. Haynes. He also stated that Ms. Cure "see[s] the existence of the children's fathers as a nuisance," whereas the guardian ad litem believed that the fathers were "primarily motivated by genuine concerns" for the children. The guardian ad litem did not believe that Mr. Haynes posed a danger to the Cures' son. The guardian ad litem concluded that Ms. Cure's move to Lebanon had not "created a change of circumstances of substance" and that she should remain the residential parent.

*C. The Trial Court's Decision*

{¶ 25} The trial court found that a change of circumstances had occurred when Ms. Cure moved to Lebanon, began living with John Haynes, and required the child to attend a new school; it further found that these changes were not in the child's best interest. Generally, the trial court found (and expressly stated) that the evidence presented

by Mr. Cure and Mr. Gartin was credible, and Ms. Cure's and Mr. Haynes's testimony lacked credibility.

{¶ 26}    Specifically, the trial court found that Ms. Cure had unresolved anger management and relationship issues and lacked maturity.  The court expressed "genuine and immediate concern about [the son's] health and safety" while the son was with Ms. Cure and Mr. Haynes, and observed that Ms. Cure "subordinated her children's interest in favor of her desire to establish a long-term relationship" with Mr. Haynes, which was not in her son's best interest.  The court noted that Ms. Cure had had "a multitude of failed relationships with men," had introduced many men into her children's lives, and had "subjected her children to environments involving disharmony * * * and subsequent failed relationships."  The court also noted that the move to Lebanon had made it more difficult for the Cures' son to maintain close relationships with his extended family in Clark County.  The court found that Ms. Cure "comes across as arrogant and close-minded [sic]," and it concluded that she was attentive to her son's needs only when those needs did not "conflict with her personal agendas, such as the establishment of relationships with different men."  The court concluded that the primary motive for the move was for the convenience of Mr. Haynes and "had nothing to do with what was best for this child." The court also observed that Ms. Cure had not complied with the court's order that her son should not be left alone with Mr. Haynes, that she had purposely "segregated" her children from their fathers, and that she "had no intention to communicate or cooperate in the future with Mr. Cure for [their son's] benefit."

{¶ 27}    With regard to Mr. Haynes, the trial court found that he lacked character

and had numerous unresolved issues, including anger management issues, anxiety, depression, trouble sleeping, post-traumatic stress, dishonesty, and overall behavioral issues. The court expressed skepticism about the future of Ms. Cure's relationship with Mr. Haynes, noting that he was still married to someone else.

{¶ 28} The trial court found that Mr. Cure had been an active part of his son's life, that his motives in pursuing custody were "well intentioned," and that the Cures' son "has a greater opportunity to develop health[y] relationships with friends, relatives, and others while residing with his father, all of which will assist him in his future development." Although the court noted that Mr. Cure had been married and divorced three times, it concluded that "credible evidence * * * suggests that his relationship to his current fiancé who he had resided with for approximately four years is stable and consistent." The court also noted that Mr. Cure had "made significant efforts in life to better himself and to serve as an appropriate role model" for his son, such as earning his GED and earning a college degree by attending school part-time.

{¶ 29} The trial court did not abuse its discretion in concluding, based on the evidence presented, that a change of circumstances had occurred that warranted a change in custody. Ms. Cure chose a lifestyle wherein she moved from relationship to relationship and residence to residence frequently, without any apparent regard for the effect that this transient lifestyle had on her son's ability to feel secure and to form relationships of his own. Although Ms. Cure believed that she had found "the man of her dreams" in Mr. Haynes, the trial court had ample reason to be skeptical that the relationship would last, based on Ms. Cure's and Mr. Haynes's relationship histories, the

fact that he was not yet divorced from his previous wife, and Mr. Haynes's inability, in particular, to maintain a monogamous relationship.

{¶ 30} The trial court also did not abuse its discretion in concluding that the son's best interest would be served by a change of custody and that the benefits of such a change outweighed any harm that would be caused by the change. Ms. Cure's tendency to jump from one relationship to another made it very difficult for her son to maintain his own friendships at home or at school, and her move to Lebanon, in particular, created hardship in his visitation with his father and weakened his relationships with extended family on both sides in Clark County. Even more troubling than the moves themselves, however, was Ms. Cure's complete failure to recognize the adverse effects of her moves and relationship choices on her son.

{¶ 31} Although the trial court discussed the relationships involving the parties and others, the court's approval or disapproval of these relationships did not factor into its decision; rather, as we have stated, the trial court was concerned with whether there had been a change of circumstances, the best interest of the child, and weighing any harm that likely would be caused by a change in the allocation of parental rights. Mr. Cure demonstrated all of the factors necessary to support a reallocation of parental rights, and the trial court did not err in granting his motion.

{¶ 32} The first and second assignments of error are overruled.

### *The Finding of Contempt*

{¶ 33} Ms. Cure's third assignment of error states:

**The trial court erred by finding appellant in contempt of court.**

**{¶ 34}** Ms. Cure argues that the trial court erred in finding her in contempt of its order that the Cures' son should not be left with Mr. Haynes unsupervised, because she did not violate the court's order "in spirit."

**{¶ 35}** An appellate court will not reverse a finding of contempt unless the trial court has abused its discretion. *Ahmed v. Ahmed*, 2d Dist. Montgomery No. 23740, 2010-Ohio-5635, ¶ 36.

**{¶ 36}** Evidence was presented at the hearing about several specific instances in which Ms. Cure allowed either her son or her daughter to be alone with Mr. Haynes; two incidents related to the daughter, and two related to the son. (The court had also imposed a restriction on Ms. Cure's daughter being with Mr. Haynes unsupervised, and Mr. Gartin also filed a motion for contempt.) With respect to the Cures' son, the first instance occurred when Mr. Haynes sat in a car outside a doctor's office with the Cures' son while Ms. Cure, Mr. Gartin, and their daughter attended a therapy session inside the building. Mr. Haynes and Ms. Cure did not believe that this incident violated the court's order because Ms. Cure was nearby. The second incident occurred the morning of one of the hearing dates. The Cures' son had been hit in the mouth with a bat the night before and needed to go to the dentist; Ms. Cure claimed that she was unable to take him to the dentist herself because of the hearing, that she was unable to get in touch with Mr. Cure, and that no one else was available, so Mr. Haynes took the child to the dentist. Mr. Cure denied that Ms. Cure had made a genuine effort to contact him and that Mr. Haynes had been the only available option.

**{¶ 37}** Ms. Cure did not deny that there had been instances in which Mr. Haynes

was alone with her son after the court had prohibited such conduct; in her opinion, the conduct had either been necessary (the dentist appointment) or had technically complied with the court's order because she had been close-by (the therapist appointment). It was for the trial court to determine whether, in fact, either of these violations of its order had been justified by the surrounding circumstances. We cannot conclude that the trial court abused its discretion in concluding that they had not.

{¶ 38}    The third assignment of error is overruled.

### *Conclusion*

{¶ 39}    The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and CANNON, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Terri L. Parmley
L. Anthony Lush
Hon. Thomas J. Capper