[Cite as *In re K.S.*, 2013-Ohio-959.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: K.S.               :

                                   :          C.A. CASE NO.   25335

                                   :          T.C. NO.   JC 2003-10203

                                   :          (Civil appeal from Common
                                              Pleas Court, Juvenile Division)

                                   :

                                   :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the   15th   day of    March   , 2013.

. . . . . . . . . .

KYRA W.
     Plaintiff-Appellant

WILLIAM S.
     Defendant-Appellee

. . . . . . . . . .

PER CURIAM:

       **{¶ 1}**  Kyra W. appeals from a judgment of the Montgomery County Court

of Common Pleas, Juvenile Division, which denied her motion for shared parenting and a

change of custody. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} K.S., born in 2003, is the child of Kyra and William. Shortly after K.S.'s birth, Montgomery County Children Services filed a dependency complaint in the juvenile court, based on concerns regarding Kyra's drug use and severe mental health problems. Kyra retained custody of K.S., but with protective supervision by the agency. A semiannual review, dated August 2004, noted that K.S. was in Kyra's custody, but William was the child's primary caregiver.

{¶ 3} In February 2005, William moved to be named the residential parent of K.S. Later that year, William was granted legal custody of K.S., and Kyra was granted supervised visitation at Erma's House. However, Kyra spoke inappropriately to Erma's House staff and Kyra refused Erma's House's services; thereafter, visitation was supervised by family members. Kyra filed numerous motions for change of custody in 2006, 2008, 2009 and 2010. Each of the motions was denied; none of the juvenile court's decisions was appealed.

{¶ 4} On November 16, 2011, Kyra filed a motion for shared parenting and a change of custody. After a hearing before a magistrate, the magistrate denied the motion. Kyra filed objections to the magistrate's ruling, but did not provide a transcript of the hearing. On July 25, 2012, the juvenile court overruled the objections and adopted the magistrate's decision.

{¶ 5} Kyra appeals from the juvenile court's judgment. Kyra has not articulated any specific assignments of error, as required by App.R. 16. However, in her appellate brief, she argues that the trial court should have granted her motion, as K.S. was being

neglected by her father and awarding custody to Kyra was in K.S.'s best interest. A transcript of the magistrate's hearing was prepared for the appeal.

{¶ 6} In order to prevail on a motion for reallocation of parental rights, the movant must demonstrate that (1) there has been a change in the circumstances of the child or the residential parent, (2) modification of the existing custody decree is necessary to serve the child's best interest, and (3) the harm likely to be caused to the child by a change of environment is outweighed by the advantages of the change of environment. R.C. 3109.04(E)(1)(a); *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012-Ohio-626, ¶ 10.

{¶ 7} A change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Id.* at paragraph two of the syllabus. We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion. *Chaney* at ¶ 9; *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7.

{¶ 8} Kyra was the sole witness at the hearing on her motion for change of custody. She testified that she was "sentenced" to Erma's House, but she was asked not to come back after she complained about sexual harassment. (An employee called her "darling.") Kyra indicated that she had planned to donate "Christian games" and money to Erma's House prior to being discharged from the program.

{¶ 9}     Kyra stated that K.S. came for visitation with "all kinds of bites" and wearing the same clothes.  She stated that K.S.'s tooth was black the last time she saw it, and the tooth ended up being pulled.  Kyra reported that K.S. was failing school.  She claimed that William was "sewing [sic] bad seeds in my child."

{¶ 10}   Kyra claimed that she could provide for K.S. and make sure her needs were met, that she could educate K.S. "on college work," and that she wanted to "sew righteous seeds in her."  Kyra stated that she could be participating in the PTA and taking K.S. to Zumba classes with her to help with K.S.'s weight.  She would not allow K.S. to watch television, but would get educational DVDs.  Kyra stated that she had changed her own behavior for the better.   She said she "was getting right with God."

{¶ 11}   William did not testify at the hearing, but he told the magistrate that K.S. was doing well in school, that she went to the dentist, that her hair gets done every other week in braids, and everything was okay at home.

{¶ 12}     The magistrate made the following findings of fact:

1.     The mother filed a petition for custody and for shared parenting of this child on November 16, 2011;

2.     The child was placed in the legal custody of the father by Court order issued August 31, 2006, and has been in his custody since that date;

3.     The mother last filed a petition for custody on September 9, 2010 and that motion was overruled by decision issued June 30, 2011;

4.     The mother has not had any parenting time with the child in at least over one year, and prior to that time, she had parenting time at Erma's House but was discharged from Erma's House by staff there for

violation of rules;

5.     The mother stated she should be granted custody because she could educate the child at college level, she would get extra weight off the child, she would see that the child never had to go to the dentist because she would make her brush and floss, she could do PTA, she would not allow the child to watch public TV, she would not give the child sugary drinks and snacks, she had the heart and desire to have custody of the child and she had changed and matured and was not living an evil life;

6.     The mother further testified that Erma's House staff were unfair and she had intended to donate Christian games and other things but they discharged her from the program instead;

7.     The father stated that [the] child was doing well in school and home.

{¶ 13}  In its conclusions of law, the magistrate stated that there was no testimony that any circumstances had significantly changed since custody was last determined, that modification of the custody order would be in K.S.'s best interest, or that the benefit of changing custody would outweigh the harm of a change in environment.  The magistrate noted that the court was required to retain William as the residential parent absent findings under R.C. 3109.04(E)(1)(a).  The magistrate found that Kyra "wants a change of custody because she has changed, not because circumstances of the custodian or child have changed."  The magistrate ordered that William remain K.S.'s custodian.

{¶ 14}  Although a transcript of the June 11, 2012 hearing was prepared for appeal,

the transcript was not provided to the trial court. Kyra's objections argued that William had lied when he said K.S. was fine, and she asserted that K.S. was infected with ringworm and was not well cared for. The trial court reviewed the magistrate's findings and found that, "[o]n its face, the decision of the Magistrate does not appear to be unjust, unreasonable, or in plain error."

{¶ 15} Given Kyra's failure to provide a transcript to the trial court, the trial court did not err in adopting the magistrate's findings of fact. And, even if we considered the transcript on appeal, we would conclude that the magistrate's rulings were amply supported by the testimony. We agree with the magistrate and the trial court that Kyra failed to demonstrate that K.S. or William had a substantial change of circumstances that warranted a change of custody to Kyra, that the change would be in K.S.'s best interest, or that the advantages of the change outweighed the harm.

{¶ 16} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J., FROELICH, J., and HALL, J., concur.

Copies mailed to:

Kyra W.
William S.
Hon. Anthony Capizzi