[Cite as *In re Z.L.A.*, 2025-Ohio-2355.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

IN THE MATTER OF: Z.L.A.               :
                                       :     C.A. No. 2024-CA-78
                                       :
                                       :     Trial Court Case No. 2021-G-00044
                                       :
                                       :     (Appeal from Common Pleas Court-
                                       :     Juvenile Division)
                                       :
                                       :     **FINAL JUDGMENT ENTRY &**
                                       :     **OPINION**

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

Epley, P.J.; Tucker, J.; and Hanseman, J., concur.


For the court,


[[Applied Signature]]
_____
MICHAEL L. TUCKER, JUDGE

**OPINION**
GREENE C.A. No. 2024-CA-78

JAMES F. MAUS, Attorney for Appellant
CYNTHIA A. LENNON, Attorney for Appellee

TUCKER, J.

{¶ 1} Father appeals from the trial court's decision and final judgment entry sustaining in part Mother's objections to a magistrate's decision, setting aside that decision, overruling Father's legal-custody motion, and allowing Mother to retain legal custody of the parties' minor child.

{¶ 2} Father challenges the trial court's legal-custody determination as an abuse of discretion. He argues that it erred in finding no change in circumstances to justify reallocating parental rights. He also contends it erred in finding that allowing Mother to retain legal custody was in the child's best interest.

{¶ 3} We see no abuse of discretion in the trial court's decision to retain Mother as the child's legal custodian. Accordingly, the trial court's judgment will be affirmed.

**I. Background**

{¶ 4} The child at issue, Z.L.A., was born in 2018. Father and Mother were not married. In April 2021, Father moved for legal custody of the child. By agreement of the parties, Mother was designated the child's legal custodian in August 2021. Father was awarded parenting time. Thereafter, in October 2022, Father sought a reallocation of parental rights, moving again for legal custody of Z.L.A. The motion appears to have been prompted in part by Father's concerns about the child's sustaining a broken nose while in

Mother's care. Father's motion proceeded to a two-day evidentiary hearing before a magistrate in June and July 2023. The magistrate heard testimony from Father, Mother, a court-appointed special advocate (CASA) for the child, a home-study investigator, a police officer, and Mother's work supervisor.

{¶ 5} Based on the evidence presented, the magistrate found a reallocation of parental rights appropriate and awarded Father legal custody. The magistrate found a change in circumstances since the initial decree allocating parental rights. In particular, the magistrate cited evidence that Z.L.A. was not receiving proper medical or dental care, Mother was not following up on a behavioral-health referral for the child, and Mother had failed to notify Father of injuries to the child. The magistrate also found that awarding Father legal custody was in Z.L.A.'s best interest and that the harm likely to be caused by a change of environment was outweighed by the advantages of the change.

{¶ 6} Mother filed objections and supplemental objections to the magistrate's decision. After hearing arguments, the trial court addressed Mother's objections in a March 1, 2024 ruling that allowed her to retain legal custody. We subsequently found that the trial court's ruling did not constitute a final appealable order for multiple reasons, including its lack of an explicit ruling on the objections. The trial court then filed a November 12, 2024 judgment entry sustaining Mother's objections in part and overruling them in part. Contrary to the magistrate's decision, the trial court found no change in circumstances to permit reallocation of parental rights. The trial court also concluded that the statutory best-interest factors favored Mother's retaining legal custody and that the harm likely to be caused by a change of environment for Z.L.A. was not outweighed by the advantages of a change. Therefore, the trial court declined to reallocate parental rights and allowed Mother to retain legal custody of Z.L.A. Father timely appealed.

## II. Analysis

{¶ 7} Father's sole assignment of error states:

The Trial Court abused its discretion when it overruled the magistrate's decision and denied Appellant's Motion for Legal Custody and, instead, gave sole legal custody to Appellee-Mother.

{¶ 8} Father challenges the trial court's overruling of his motion for legal custody as an abuse of discretion. He argues that the record depicts a consistent pattern of Mother's neglecting Z.L.A. following the original custody determination. Citing evidence of such neglect, he asserts that a change in circumstances existed. He also maintains that awarding him legal custody was in the child's best interest and that any harm from a change of environment was outweighed by the benefits to the child. Finally, he claims the trial court violated Juv.R. 40(D)(4)(d) by failing to state that it had conducted an independent review and that its findings were supported by the preponderance of the evidence.

{¶ 9} Modification of an existing decree allocating parental rights is governed by R.C. 3109.04(E)(1)(a), which provides in part:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶ 10} When applying the foregoing standards, a trial court must retain the existing residential parent "unless a modification is in the best interest of the child" and, as relevant

here, "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). In effect, "R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that it is in the child's best interest to retain the residential parent as designated by the prior decree." *Pathan v. Pathan*, 2000 WL 43711, *6 (2d Dist. Jan. 21, 2000). To overcome the presumption, a trial court must find, by a preponderance of the evidence, that the statute's requirements have been satisfied. *Id*.

{¶ 11} "We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion." *Chaney v. Chaney*, 2012-Ohio-626, ¶ 9 (2d Dist.), citing *Musgrove v. Musgrove*, 2011-Ohio-4460, ¶ 7 (2d Dist.). "Abuse of discretion" means a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion usually will result in a decision that is unreasonable rather than unconscionable or arbitrary. *Chaney* at ¶ 9. " 'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' " *Id*., quoting *Musgrove* at ¶ 8, citing *AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161 (1990).

{¶ 12} With the foregoing standards in mind, we see no abuse of discretion in the trial court's overruling of Father's motion for legal custody of Z.L.A. In its written decision, the trial court summarized Father's concerns as follows: "the child suffered from a fractured nose due to mother throwing a phone at her (with multiple stories being provided); the child wears clothes that do not fit; the child has bed bug bites; her home is filthy; the child is being 'whipped' by another man; the child has two 'burnt feet'; and mother did not take the child to Michael's House when [Father] alleged that somebody inappropriately touched the child."

November 12, 2024 Judgment Entry at p. 6-7.

{¶ 13} After setting forth Father's concerns, the trial court addressed each concern individually and concluded that it did not constitute a change of circumstances since the initial custody decree. In particular, the trial court acknowledged that Z.L.A. had suffered a nose fracture when she was hit by Mother's cell phone. The trial court saw no evidence that Mother intentionally hit the child with the phone as opposed to the incident being an accident. The trial court noted that Greene County Children Services did not substantiate abuse.

{¶ 14} Regarding allegations of the child's wearing ill-fitting clothing, having bed-bug bites, and living in a filthy environment, the trial court recognized that these circumstances existed. It discounted their significance to some extent by citing home investigator Rose Hoersting's opinion that Mother was addressing the issues and making necessary changes. The trial court also discounted the "whipping" allegation by noting the absence of testimony that Z.L.A. in fact ever had been struck by another man.

{¶ 15} As for allegations of burnt feet, the trial court noted evidence that the child suffered superficial burns and peeling on her feet after drawing her own hot bath water. The trial court cited "contradictory testimony" as to whether the peeling was attributable to a thermal burn or athlete's foot. The trial court characterized evidence regarding the origin of the foot issue as "conjecture and hearsay."

{¶ 16} Regarding allegations of sexual abuse, the trial court noted that Father previously had made similar unfounded allegations prior to the initial custody decree. The trial court found insufficient evidence to substantiate Father's claim that someone identified only as "Buddy" currently was abusing the child. Finally, the trial court noted that the child had serious dental issues because Mother had neglected to take her to dental appointments. The trial court concluded, however, that Father had his own untreated mental-health issues.

It questioned whether Father would do better at ensuring that Z.L.A. attended necessary medical and dental appointments.

{¶ 17} Upon review, we believe Father did establish a change of circumstances since the prior decree allocating parental rights to Mother. Although not defined by statute, a "change of circumstances" pertains to an event, occurrence, or situation that has a material effect upon the child. *In re I.E.*, 2020-Ohio-3477, ¶ 15 (2d Dist.). "A change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997); *Wiram v. Wiram*, 2017-Ohio-7436, ¶ 5 (2d Dist.). It must be "based on facts that have arisen since the prior decree or were unknown to the court at the time of the prior decree[.]" *Alexander v. Alexander*, 2013-Ohio-2349, ¶ 16 (2d Dist.). A trial court is required to consider "all the evidence" when determining whether a change of circumstances exists. *Davis* at 418. Although multiple changes viewed separately might not be sufficient, courts view the evidence collectively to determine whether a change of circumstances exists. *In re Tolbert v. McDonald*, 2006-Ohio-2377, ¶ 32 (3d Dist.); *Holcomb v. Holcomb*, 2001-Ohio-1364, *5 (9th Dist. Sept. 26, 2001).

{¶ 18} Here, Father demonstrated that Z.L.A.'s living environment was having a materially adverse effect on her well-being. At the time of the hearing, the child had just turned five years old. While in Mother's care, she had been dressing herself and wearing the same ill-fitting, dirty clothes. The child's only dental appointment resulted in a finding of 11 cavities that required three fillings and eight crowns, with her other nine teeth showing signs of decay. Mother reported that the child refused assistance with brushing and refused to drink water. Mother also failed to follow through with additional dental appointments. The court-appointed child's advocate reported that Mother's home was soiled, dirty, and smelled of cigarette smoke. It also had a bed-bug problem. The CASA report included evidence of

marijuana use in Mother's home and an implicit admission by Mother that she still smoked marijuana. Despite Mother's denials, the child's advocate also expressed concern that the child's grandfather and Mother's current boyfriend both stayed in the home. The record contained hearsay allegations that both men "whooped" Z.L.A.

{¶ 19} The two most troubling aspects of Mother's care for Z.L.A. involved the child's nose fracture and burnt feet. In August 2022, Mother took the child to a hospital emergency room with a nose injury. A x-ray revealed a fractured nasal bone. According to Mother, she had tossed her cell phone either on the bed or in a chair and accidentally had hit Z.L.A.'s nose. Conversely, the child's special advocate reported having heard the child explain that Mother had thrown the phone at her boyfriend and accidentally had hit the child.

{¶ 20} Regarding the burnt feet, the CASA report noted that Z.L.A. had reported making herself a bath and putting her own feet in hot tub water. According to the child's advocate, a doctor diagnosed "superficial burns" and referred Z.L.A. to a burn clinic for follow up care. A second doctor opined that neither an intentional injury nor an accidental burn could be ruled out. Rather than taking Z.L.A. to the follow-up appointment, Mother took the child to see her primary-care provider a few days later. That doctor recorded the child's history as a "superficial, erythematous peeling burn" to her feet. He also noted "[p]possible athletes' feet" with a "[q]uestion of burn to bilateral feet." In our view, however, the preponderance of the evidence established a burn injury to the child's feet caused by hot bath water. We also question the credibility of Mother's claim that the nasal fracture occurred when she "tossed" her phone on a chair or a bed as opposed to throwing it at her boyfriend.

{¶ 21} In any event, when viewed collectively, the foregoing evidence at a minimum established a pattern of neglect on Mother's part that created a living situation with a negative impact on the child's life. Even if the nasal fracture and burnt feet were accidents,

those events were indicative of negligent parenting by Mother. At a minimum, other evidence of deficient parenting included Mother's allowing the child to wear inappropriate clothing, the child's deplorable dental hygiene, the lack of cleanliness in Mother's home, and the existence of bed bugs. Even if we accept the trial court's decision to discount Father's allegations of sexual abuse and an adult male "whipping" Z.L.A. in Mother's home, the other evidence discussed above persuades us that Father established a change of circumstances since the prior agreed decree allocating legal custody. The nasal fracture and burnt feet occurred after the prior decree allocating parental rights, and we see no evidence that the other conditions discussed above either existed or were known to the trial court before its initial award of legal custody to Mother.

{¶ 22} Whether the trial court abused its discretion in reaching a contrary conclusion is a closer question. But even if the trial court did abuse its discretion in resolving that issue, we see no basis for reversal. As noted above, assuming arguendo that a change of circumstances did exist, the trial court proceeded to find that allowing Mother to retain legal custody was in Z.L.A.'s best interest. On that issue, the trial court did not abuse its discretion.

{¶ 23} "R.C. 3109.04(F)(1) sets forth the applicable factors for determining a child's best interest once a change in circumstance has been established." *B.M. v. P.M.*, 2025-Ohio-1674, ¶ 44 (2d Dist.). "These encompass all relevant factors, including but not limited to the wishes of the child's parents regarding the child's care; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to facilitate court-approved parenting time rights; and whether the residential parent has continuously and willfully denied the other parent's right to parenting

time in accordance with an order of the court." *Id.* No one factor is dispositive, and a trial court has discretion when evaluating and weighing them. *Id.*

{¶ 24} Here, the trial court examined the evidence in detail as relevant to each of the foregoing factors. The trial court acknowledged that Mother's home and Z.L.A.'s condition showed neglect by Mother. The trial court noted, however, that its concerns about Father were greater. Of particular significance to the trial court were Father's untreated mental-health condition, his history of violence and criminal behavior, and his history with children-services agencies.

{¶ 25} Regarding Father's mental health, the trial court noted that he previously had been diagnosed with schizoaffective disorder with paranoia and made the following findings:

> Father's untreated mental health is a concern. The CASA expressed her concerns about the lack of current mental health treatment for Father and whether medication was recommended. According to [home investigator] Rose Hoersting, she reviewed Children Services records and saw that Father was diagnosed with Schizoaffective disorder with paranoia. During the course of the trial no testimony was presented that Father's mental health issues are or have been successfully treated. Father acknowledges that he was diagnosed with this disorder and had treatment in the past. Father also testified that he chose not to have current treatment based on his own judgment, not that of medical personnel. He previously had a payee for a Social Security claim but the reason why was not explained on the record.

(Citations omitted.) November 12, 2024 Judgment Entry at p. 9.

{¶ 26} As for violence, criminal behavior and prior interaction with children-services agencies, the trial court reasoned:

The Magistrate's Decision notes that Father has an extensive history with Hamilton and Montgomery County Children Services, including prior neglect and physical abuse indicated against three of his children. Greater weight should have been given to Father's criminal history that includes a prior felony conviction for abduction. Further, Father's history with Children Services is a relevant factor that should have been given more weight by the GAL and Home Investigator before making their recommendations.

There was testimony at the contested hearing that Father was violent with family members including [Mother] and that he choked his daughter [C.] and that Hamilton County Children Services was involved with [Father] as a parent for both [C.] and his child [I.] in 2019. [Father] admits to having a violent past. Father also admits to the CASA that he was both violent and a "bully" in the past. He is also on probation for Disorderly Conduct, Resisting Arrest and Failure to Appear admitting that he doesn't always show up for his appointments with his probation officer. He has a conviction for abduction as well. When questioned if he hit another girlfriend, [Father] denied any abuse stating that "You know, women nowadays are more violent than men? They fight and you've got to defend yourself." Mother in this case testified that Father was physical with her when she was pregnant with this child and choked her and that he also pushed her down the stairs during pregnancy requiring an emergency police call. [Mother] also testified that she observed Father beat his son [C.] with a belt or a coat hanger at around age five for urinating in the bed. Father's behavior with family members is concerning.

Father also testified that he took a "Stop the Violence Class" in the past

and is on probation. Ms. Hoersting testified that the records show that the father has been a batterer. He testified that he had a case with Montgomery County for Abduction in 2018 or 2019 and has been charged with Domestic Violence a number of times. Father testified that his "past was kind of violent, but it's nothing like that now." The CASA report stated that "[Father] stated, I was a bad person. I was violent and a bully."

Testimony at the contested hearing revealed that Father relinquished custody of two of his female children to Children Services. He acknowledges that he told Children Services to take them because he "couldn't deal with it" and it was too much for him to handle. Hamilton County Children Services was also involved when he was accused of choking his child [C.] and allegedly made her stand outside on a porch with nothing on but a bra and underwear. This child advised Children Services that she was questioned by Father about being sexually active after she took longer than expected to go to the store and that she was questioned about her sister [I.] being a prostitute. According to the Home Investigator, she has records from Hamilton, Montgomery and Greene County Children Services regarding Father. Neglect and Physical Abuse were indicated in Hamilton County on May 5, 2020 and March 10, 2020.

(Citations omitted.) *Id.* at p. 2-3.

{¶ 27} Based largely on Father's "untreated mental health diagnosis, criminal and Children Services history," the trial court concluded that, despite Mother's shortcomings, it was in Z.L.A.'s best interest for Mother to retain legal custody. After "weighing the concerns that exist for both parents," the trial court determined that "Father's issues are greater." Although the child's advocate and the home investigator both had recommended

reallocating legal custody to Father, the trial court noted that their reports "did not reflect consideration of critical information relating to Father's relinquishment of custody to Children Services, his mental health and his own admission that he has not always been honest."

{¶ 28} On appeal, Father argues that his history of violence, criminal behavior, and interaction with children-services agencies were far enough in the past to retain little relevance to his legal-custody motion. He also asserts that his diagnosis with schizoaffective disorder was undated and that the child's advocate and the home inspector saw no problems linked to mental health or anything else. Father additionally asserts that he underwent a mental-health assessment after the custody hearing and received no diagnosis or recommendation for continued treatment. Father also cites evidence that Z.L.A. was observed to be better behaved when at his house.

{¶ 29} Upon review, we cannot say the trial court's best-interest determination was an abuse of discretion. In considering whether to reallocate parental rights, the trial court was best positioned to weigh its concerns about Z.L.A.'s welfare in Mother's care against its concerns about Father's history of violence and criminal behavior, his history with children-services agencies, and his mental-health diagnosis. Although Father contends his past history and mental-health diagnosis had little relevance to his legal-custody motion, the trial court acted within its discretion in concluding otherwise.

{¶ 30} Father sought a reallocation of parental rights and moved for legal custody in October 2022. The two-day evidentiary hearing on his motion occurred in June and July 2023. As recently as July 2022, Father and Mother had been involved in a domestic dispute that allegedly involved Mother's slapping Father and Father's grabbing her by the hair and placing a hand around her neck. As recently as May 2020, children-services' records indicated neglect and abuse by Father against three of his other children. The home-study

investigation report included information about Father having an "incoherent train of thought," being "difficult to redirect when he became angry," and being "known to punch and hit his teenage daughters." Father also admitted that he had "given away" his two oldest daughters to children services, explaining that they were "too much" for him to handle and that he could not "deal with it." Regarding his mental health, Father testified that he did not believe he suffered from schizoaffective disorder despite having been diagnosed with it. Based on his own opinion that he had been misdiagnosed, Father discontinued treatment.

{¶ 31} On appeal, Father seeks to discount any concerns about his mental health by citing two assessments he underwent while Mother's objections to the magistrate's decision were pending. The parties referenced those assessments during a February 14, 2024 oral argument to the trial court on Mother's objections. Father underwent the additional assessments at the trial court's request. Both assessments were diagnostic in nature based on self-reporting by Father. They occurred on October 12, 2023 and November 20, 2023.

{¶ 32} The first assessment did not make any diagnosis or recommend Father for any services. The second included a report that noted his history of mental-health issues dating back to age nine. It noted that Father had stopped taking his medication in 2021 and that he did not believe he needed any treatment, as he denied having any symptoms for at least the past two years. The second assessment included numerous findings regarding Father's mental-health status. Despite his denial of current mental-health problems, the evaluator expressed concerns. The evaluator opined that Father could still have a "severe mental health issue," or he could have a "history of malingering in order to avoid legal situations and challenges that he has encountered in the past due to his behavior and legal charges."

{¶ 33} The evaluator's report noted that "[t]he client in the past has often reported very serious mental health issues to include unstable mood swings, hearing voices that often

give him command hallucinations, raging which he hasn't been able to control which has led to him abusing his girlfriends, abduction charges and assault charges all which in the past the client has claimed has been all related to his mental health issues." Elsewhere in the report, the evaluator recognized that Father previously had reported issues "so severe that they caused him to be impulsive and he had command hallucinations which often directed him to hurt the people he loved such as his past girlfriends, etc." The evaluator noted, with an apparent degree of skepticism, that "[t]oday, the client reports that all of these serious symptoms that he has suffered from as recently as 2021 no longer exist[.]" Ultimately, the evaluator recommended that Father "go through a psychological evaluation and testing to determine the best course of outcome for the client and the safety of final placement for this child." In reaching this conclusion, the evaluator observed that "[t]hus far, the client has been the only source of information in this assessment and past assessments in 2018, 2019, and 2021 and he appears to have been a poor historian."

{¶ 34} In our view, Father's most recent assessments did not undermine the trial court's decision to retain Mother as Z.L.A.'s legal custodian. Despite those assessments, the trial court reasonably could have determined that its concerns about Father having a serious, untreated mental-health condition were not alleviated. Based on our review of the record, we find no abuse of discretion in the trial court's decision to allow Mother to retain legal custody of Z.L.A.

{¶ 35} In a final argument, Father contends it is unclear whether the trial court complied with Juv.R. 40(D)(4)(d), which requires "an independent review" when a party objects to a magistrate's decision. Father also claims the trial court failed to articulate "what level or burden of proof" it applied when conducting its review. He cites *In re C.R.*, 2025-Ohio-557 (1st Dist.), and argues that we should reverse and remand for clarification.

{¶ 36} We find Father's argument to be unpersuasive. In *In re C.R.*, the First District recognized that a trial court's "independent review" of a magistrate's decision under Juv.R. 40(D)(4)(d) requires de novo consideration of the facts and issues, not abuse-of-discretion review. *Id.* at ¶ 6. The First District observed that appellate courts presume compliance with Juv.R. 40(D)(4)(d) where the record reflects that a trial court independently reviewed the evidence and the law and reached its own conclusion based on the applicable burden of proof. *Id.* at ¶ 7. The First District reasoned that a remand is required, however, if an appellate court cannot tell whether a trial court correctly applied de novo review or improperly applied abuse-of-discretion review to a magistrate's decision. *Id.* at ¶ 9.

{¶ 37} Here the trial court's November 12, 2024 judgment entry demonstrates a proper independent review of the evidence and legal issues. Although the trial court did not state that it was conducting a de novo review, its analysis makes the nature of its review apparent. The trial court examined the evidence itself in relation to each legal issue. Nowhere in its ruling did the trial court suggest that it was deferring to the magistrate's decision. Indeed, the trial court ultimately rejected the magistrate's recommendation to award Father legal custody. As for the burden of proof, the applicable standard was the lowest level possible—the preponderance of the evidence. *In re A.A.R.*, 2024-Ohio-601, ¶ 64 (2d Dist.) Nothing in the trial court's ruling suggests that it held either party to a higher standard.

### III. Conclusion

{¶ 38} Based on the reasoning set forth above, Father's assignment of error is overruled, and the judgment of the Greene County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HANSEMAN, J., concur.