[Cite as *In re A.K.*, 2012-Ohio-412.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

IN THE MATTER OF:                :

    A.K., C.K. and Z.K.          :        C.A. CASE NO. 2011 CA 15

                                 :        T.C. NO. 2007JI08, 2007JI09,
                                                2007JI10

                                 :
                                         (Civil appeal from Common
                                 :      Pleas   Court,   Juvenile
                                 Division)

                                 :

         . . . . . . . . .

**O P I N I O N**

Rendered on the ___3rd___ day of __February__, 2012.

. . . . . . . . .

BRIAN L. KINTER, 362 East Madison Avenue, Springfield, Ohio 45503
    Appellant Pro Se

MICHAEL EDWARDS, Atty. Reg. No. 0082030, 41 E. Main Street, Enon, Ohio 45323
    Attorney for Appellee

RONALD TOMPKINS, Atty. Reg. No. 0030007, 19 Pearce Place, Urbana, Ohio 43078
    Attorney for Appellee

. . . . . . . . .

DONOVAN, J.

{¶ 1}   This matter is before the Court on the pro se Notice of Appeal of Brian

Kinter, filed June 22, 2011.  Kinter appeals from the trial court's May 23, 2011

denial of his pro se "Motion for Contempt," filed January 28, 2011. Therein Kinter sought an order finding Jenise Boltz in contempt for interfering with his visitation rights with the parties' children, A.K., C.K. and Z.K.

{¶ 2} In his motion, Kinter asserted that, on December 17, 2010, he was denied an hour of visitation with his children after they were released from school at 2:00 p.m. and were cared for by a babysitter until 3:00 p.m. at the direction of Boltz. He further asserted that Boltz denied him his scheduled visitation on December 31, 2010, as well as January 14, 2011. Kinter requested "an order granting makeup time for the visitation time denied," as well as "an order awarding him a reasonable sum as reimbursement" for his costs to travel to Kenton, Ohio, where his children reside. Kinter further asserted that Boltz impeded telephone communication between him and his children. Finally, he sought an "order requesting police intervention and arrest" in the event Boltz interferes with his visitation rights in the future.

{¶ 3} Boltz filed a pro se response, asserting that the children went to the babysitter's on December 17, 2010, because Kinter was an hour late picking them up at school. Boltz asserted that Kinter had the school nurse call her to inquire about the children's whereabouts and that he was "yelling what a bad mom I am" in the background. According to Boltz, she "asked the nurse to tell him to stop using the children as pawn[s] in his game of life and she said she would." Boltz asserted that Kinter was not entitled to visitation on December 31, 2010 and January 14, 2011. According to her, she was entitled to have the children over the Christmas holiday, and Kinter's regular visitation was to resume on January 7, 2011. Boltz

asserted that Kinter had telephone communication with the children "until he failed to pay the phone bill." Boltz asked the court for an order prohibiting Kinter from making negative comments about her in front of the children.

{¶ 4} The docket sheet indicates that Kinter filed a motion for a change of custody on February 11, 2011, along with an affidavit of indigency, and that the court issued an Order indicating that Kinter is not indigent for purposes of the motion to change custody, and further assessed a $100.00 filing fee. The docket sheet further indicates that the court issued an Entry on February 28, 2011, placing Kinter's custody motion on the inactive docket, noting that the same issues were currently pending on appeal in this Court (in Kinter's appeal from the denial of his Civ.R. 60(B) motion for relief from judgment).

{¶ 5} On May 23, 2011, after a hearing, the court issued a Decision that provides that Kinter "presented the testimony of Cary Roehm, elementary principal for the Kenton City Schools, Jennifer Penczarski, Superintendent of Kenton City Schools, Brenda Jennings, nurse for Kenton City Schools, Jenise Boltz, mother and Marjorie Cannode, baby sitter." The court found that Boltz was not in contempt regarding Kinter's visitation on December 17, 2010. According to the court, in "Mr. Kinter's mind, the visitation should have started at 2:00 P.M. but the court finds that regularly scheduled visitation always started at 3:00 P.M. and on this day, Mr. Kinter received the children at 3:00 P.M." Regarding visitation on December 31, 2010, and January 14, 2011, the court found that Boltz was not in contempt because neither party had followed the court-ordered holiday parenting time schedule, "which has lead to a complete misunderstanding and misinterpretation of

when visitation should take place during these times." The court denied Kinter's requests for make-up visitation and travel costs because of the parties' "mutual misinterpretation and miscommunication." Regarding Kinter's allegations that Boltz impedes his telephone communication with the children, the court found "absolutely no evidence to support this claim." The court refused to order police intervention and arrest as Kinter requested, and noted that the proper vehicle to address visitation issues is a motion for contempt. The court ordered that "neither party is to use obscene language or gestures in front of the children particularly if either is directed at the other parent."

{¶ 6} In addition to his appellate brief, Kinter filed multiple exhibits, including a Magistrate's Decision and Orders, dated February 9, 2009, designating Boltz as the sole custodian and residential parent of the parties' children and granting Kinter parenting time; a Decision dated October 5, 2010, sustaining Kinter's objection to a decision of the magistrate that Kinter waived his right to counsel; Kinter's February 11, 2011, Motion for Change of Custody; correspondence from the principal of Espy Elementary School, Cary Roehm, that provides in part that Boltz contacted the school on December 17, 2010, requesting that the children be released to the babysitter at 2:00, and that Kinter arrived at the school at 2:00 to pick up the children; correspondence from Kinter to previous counsel for Boltz, dated January 5, 2011 and January 10, 2011; correspondence from Kinter to Boltz, dated December 13, 2010, in which Kinter indicates that he will pick the children up one hour early at school on December 17, 2010 due to an early dismissal, and in which he offers to pick up the children at 9:00 a.m. on January 14, 2011, a school holiday,

on which he asserts he is entitled to visitation; a decision issued by the trial court on December 20, 2011, denying Kinter's Civ.R. 60(B) motion as untimely, finding Kinter indigent, and waiving costs; a Journal Entry dated February 14, 2011, finding that Kinter is not indigent and providing that the court "will assess filing fees of $100.00"; and correspondence dated June 3, 2011, from Marcy L. Bills of the Official Reporting Agency requesting a deposit of $860.00 for the preparation of a transcript of the hearing on Kinter's contempt motion.

{¶ 7}   Boltz did not file a brief in response to Kinter's.

{¶ 8}   Kinter asserts one assignment of error as follows:

{¶ 9}   "THE COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FIND THE DEFENDANT IN CONTEMPT FOR INTERFERENCE WITH THE PLAINTIFF'S VISITATION WHEN THE OVERWHELMING WEIGHT OF THE EVIDENCE FAVORS A FINDING OF GUILT."

{¶ 10} Kinter asserts that it is "highly probable" that the trial court refused to enforce its own order regarding visitation in "retaliation" for Kinter's Civ.R. 60(B) motion for relief from judgment, in which he argues he exposed "Fraud upon the Court, Through the Court, and by the Court."   Kinter asserts that the record herein reveals "an appearance of bias, discrimination, and corruption in the Champaign County Court * * * ."

{¶ 11} Regarding the events of December 17, 2010, according to Kinter, the testimony of the principal at the hearing and her correspondence confirms that Kinter, not Boltz, complied with the visitation schedule.  Kinter further asserts, in reliance upon the testimony of the school nurse, that Boltz lied about telling the

nurse to tell Kinter to stop using the children as pawns. Kinter asserts that the court "will do everything it can to assist Ms. Boltz in carrying through with her alienation efforts." Kinter directs our attention to the Magistrate's Decision and Orders of February 9, 2009, which provides in part that Kinter "shall have parenting time with the children in alternating weekends from Friday at the conclusion of the children's school day until Monday morning at the start of the children's school day," and he argues that his visitation began at 2:00, when school concluded, and not 3:00.

{¶ 12} Kinter denies the court's determination that he misunderstood the visitation schedule; he notes that two weeks from December 17, 2010, when the children were undisputably with him, was December 31, 2010, and that two weeks from that date was January 14, 2011.

{¶ 13} In response to the trial court's indication that filing a motion for contempt is the proper vehicle to address visitation issues, Kinter argues that doing so serves no value.

{¶ 14} Kinter directs our attention to the December 20, 2010, decision of the trial court, which provides that he is indigent, and the journal entry of February 14, 2011, which to the contrary provides, "Based upon the information given, the Court does not find that movant, Brian Kinter, is found to be indigent." Kinter further directs our attention to the correspondence from Marcy Bills requesting a deposit of $860.00 for a transcript of the April 13, 2011 hearing. He asserts that the court imputed minimum wage income to him for child support purposes, and that he pays $547.47 a month "in child support and arrearages, in addition to transportation

costs of approximately $100 per month [and] it is impossible for the father to have the finances to pay for the transcript of record within thirty days in which one has to file an appeal."

{¶ 15} Although Kinter asserts that he is unable to afford a transcript, our review is limited to the record provided to us under App.R. 9.  "The duty to provide a transcript for appellate review falls upon the appellant. (Internal citations omitted).  An appellant bears the burden of showing prejudicial error by reference to matters in the record."  *Shirley v. Kruse,* 2nd Dist. Greene No. 2006-CA-12, 2007-Ohio-193, ¶ 22.  "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, we have nothing to pass upon and, thus, we have no choice but to presume the validity of the lower court's proceedings and affirm." *Shirley*, Id.

{¶ 16} If the transcript of proceedings is unavailable, App.R. 9(C) requires appellant to prepare a statement of the evidence.   "The Supreme Court of Ohio has held, in the context of a civil case, that 'a transcript is unavailable for purposes of App.R.9(C) to an indigent appellant unable to bear the cost of providing a transcript.'" *St. Germaine v. St. Germaine,* 2nd Dist. Greene No. 2009 CA 28, 2010-Ohio-3656, ¶ 14 n. 1, quoting *State ex rel. Motley v. Capers* (1986), 23 Ohio St.3d 56, 491 N.E. 2d 311.   "The narrative statement provided for in App.R. 9(C) is an available, reliable alternative to an appellant unable to bear the cost of a transcript."  *State ex rel. Motley*, at 58.

{¶ 17} Presuming the regularity of the proceedings below in the absence of a transcript or statement of the evidence, Kinter's assigned error is overruled.   The

judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Brian L. Kinter
Michael Edwards
Ronald Tompkins
Hon. Lori L. Reisinger