[Cite as *In re A.K.*, 2015-Ohio-29.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

IN THE MATTER OF: A.K., C.K., and Z.K.

:

Appellate Case No.    2013-CA-63

Trial Court Case Nos.   2007-JI-08
                                        2007-JI-09
                                          2007-JI-10

(Appeal from Juvenile Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of January, 2015.

. . . . . . . . . . .

MICHAEL EDWARDS, Atty. Reg. No. 0082030, 41 East Main Street, Enon, Ohio 45323
          Attorney for Minor Children

BRIAN K.
          Appellant-Pro Se

JACOB JEFFRIES, 133 South Main Street, New Carlisle, Ohio 45344
          Guardian Ad Litem

JENISE B.
          Appellee-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Brian K. appeals from a judgment denying his motion for change of custody of his three minor children, A.K., C.K., and Z.K., from their mother, Jenise B., to himself.[1] In support of his appeal, Brian raises several issues, including that: (1) the trial judge erred by failing to recuse herself from trial due to a conflict of interest; (2) the trial court erred in finding that no change of circumstances had occurred; (3) the court erred by conducting an in camera interview of the children, by excluding attorneys from the interview, and by refusing to allow Brian's counsel to review a transcript of the interview; (4) the court erred in excluding Brian's expert as a witness; (5) the court erred in excluding evidence prior to May 2011; and (6) the court's decision was against the manifest weight of the evidence.

{¶ 2} We conclude that no error occurred in the trial court proceedings, with the exception of the failure to qualify Brian's expert as a witness. However, any error was harmless, as the trial court allowed the expert to testify about factors relating to alienation, and the trial court, as fact-finder, was responsible for reaching the ultimate conclusion on this issue. Accordingly, the judgment of the trial court will be affirmed.


I. Facts and Course of Proceedings

{¶ 3} This case has a long and complicated history, and this is the fourth time the parties have been before our court. The facts surrounding the parties' initial custody battle are set forth in the case of *In re A.K.*, 2d Dist. Champaign No. 09-CA-32, 2010-Ohio-2913 (*A.K. I*).

---

[1] For purposes of the minors' privacy, the parents will be identified by their first names only, and initials will be used in place of the minors' names.

Essentially, Brian and Jenise began their relationship in 1990 and separated in February 2007, when Jenise left and took the parties' three children to Pennsylvania. *Id.* at ¶ 3-4 and 7. A prolonged and bitter custody dispute ensued, which included accusations of sexual abuse by Brian of C.K. (that were not found to be substantiated); allegations about Brian's controlling behavior; motions for contempt filed against Jenise for denial of visitation; and allegations of Jenise's attempts to alienate the children from Brian. *Id.* at ¶ 12-15, 17, and 35-38. Ultimately, Jenise was awarded sole custody of the children, and Brian was given visitation. *Id.* at ¶ 17. We affirmed the judgment in June 2010, finding no abuse of discretion. *Id.* at ¶ 45.

{¶ 4} In December 2010, Brian filed a motion for relief from the judgment granting Jenise legal custody, based on alleged fraud by Jenise and the trial court. *See In re A.K.*, 2d Dist. Champaign No. 2011 CA 4, 2011-Ohio-4536, ¶ 3 (*A.K. II*). The trial court held that the motion was untimely, and we affirmed the court's decision in September 2011. *Id.* at ¶ 4 and 17.

{¶ 5} Previously, in January 2011, Brian had filed a pro se motion for contempt, based on Jenise's denial of visitation on December 31, 2010. The trial court denied this motion in an entry filed on May 23, 2011, and Brian appealed. *See In re A.K.*, 2d Dist. Champaign No. 2011 CA 15, 2012-Ohio-412, ¶ 3 and 5 (*A.K. III*). We affirmed this decision in February 2012, based on Brian's failure to file a transcript of the evidence, which required that we presume the regularity of the trial court proceeding. *Id.* at ¶ 16-17.

{¶ 6} In February 2011, Brian had also filed a pro se motion for change of custody, based on Jenise's alleged denial of visitation and campaign of alienation against him. However, on February 28, 2011, the trial court placed the motion for change of custody on its inactive docket, based on the fact that the same issues were currently before the court of appeals. In the

meantime, the trial court decided the contempt motion, as noted, on May 23, 2011. After we overruled Brian's motion for relief from the original custody judgment in September 2011, the trial court returned the case to its active docket. Subsequently, in October 2011, the attorney for the children, who had been appointed in February 2011, filed a motion asking the court to modify Brian's parenting time, based on allegations that Brian was mentally and physically abusive. Brian also filed a show cause motion on October 13, 2011, based on Jenise's alleged denial of visitation on numerous occasions since July 2011.

{¶ 7}     On October 14, 2011, the trial court conducted an in-camera interview with the children and, on October 29, 2011, the court suspended all parenting time for Brian during the pendency of the matter. The trial court did not offer any explanation for its decision, and continued the matter until February 2012.

{¶ 8}     In March 2012, Brian filed a notice that he had filed a federal court action against various parties, including the juvenile judge presiding over Brian's case in the Champaign County Juvenile Court.[2]     The trial court continued the case due to the pending federal lawsuit. Brian then filed an affidavit of disqualification against the trial judge in May 2012, contending that the trial judge had previously recused herself from the case in an entry dated February 20, 2009, due to a conflict of interest. In June 2012, the Supreme Court of Ohio denied the affidavit of disqualification, and also denied Brian's request for reconsideration.

{¶ 9}     Subsequently, in September 2012, Brian filed a request with the trial court, asking the trial judge to recuse herself. The judge refused this request in October 2012. The

---

[2]     The federal action was dismissed by the federal district court in July 2012, based on lack of jurisdiction, judicial immunity, and failure to state a claim.    *See [K.] v. [B.]*, S.D. Ohio No. 3:12-CV-95, 2012 WL 2871623 (July 12, 2012).

trial court then filed an entry allowing Brian's former counsel to withdraw. The court also denied Brian's new counsel's request for a transcript of the in-camera interview. In addition, the court appointed a guardian ad litem (GAL) for the children, and indicated that if the GAL recommended parenting time for Brian, the court would consider modifying its temporary order.

{¶ 10} Based on the GAL's recommendation, the trial court granted Brian parenting time for three hours on December 22, 2012, at the Miami Valley Center Mall. The court further provided that Brian would receive parenting time twice a month at the same location, and that the parenting time status would be reviewed in March 2013.

{¶ 11} In March 2013, Brian filed a motion with the trial court, asking the court to hold Jenise in contempt for failing to provide the children for appointments with Dr. Mason, who had previously been disclosed as an expert witness by Brian. The court found Jenise in contempt, and ordered that she produce the children for appointments on March 28, April 3, and April 11, 2013. Additionally, the court ordered that Brian would receive parenting time on the first and third Saturdays of each month, from 10 to 5, with no restrictions on location.

{¶ 12} During a review hearing on June 13, 2013, Brian requested temporary custody, and Jenise asked that his parenting time be supervised. The trial court ordered that Brian receive parenting time every other weekend from Saturday at 10:00 a.m. to Sunday at 5:00 p.m. Finally, the court ordered that a final evidentiary hearing on all pending issues would be held on August 26 and 27, 2013.

{¶ 13} Shortly thereafter, the attorney for the children filed a motion seeking an ex parte order restricting Brian's parenting time, and asking the court to conduct another in-camera interview with the children. The court denied the request for an ex parte order, but scheduled an

in-camera interview for August 8, 2013. The trial court also denied Brian's motion for a stay of the in-camera interview. Brian filed a notice of appeal from this decision, and also filed a motion for stay of the proceedings, which was denied by the trial court on August 7, 2013.[3] In addition, Brian filed an affidavit of disqualification with the Supreme Court of Ohio, which was rejected by the Supreme Court of Ohio on September 9, 2013.

{¶ 14} In the meantime, Brian filed a motion on August 22, 2013, again asking the court to compel Jenise to participate in the psychological evaluation of the children. In the motion, Brian alleged that he had sent a letter to counsel for the children on July 15, 2013, requesting cooperation in scheduling a final interview with Dr. Mason, but had received no response. Notably, the letter was apparently incorrectly sent by mail and fax instead to the address and fax number of counsel for Jenise.

{¶ 15} At the beginning of the evidentiary hearing held on August 26, 2013, the trial court denied Brian's request to compel additional visits to Dr. Mason, based on the fact that the request was filed only a few days before the evidentiary hearing. The trial court also refused to allow Brian's counsel to introduce an exhibit indicating that counsel for the children was named on the letterhead of counsel for Jenise, i.e., indicating that the request for additional appointments had been sent to a correct address.

{¶ 16} Ultimately, due to the number of witnesses, further trial dates were set for October 9, 11, and 16, 2013, and Dr. Mason's testimony was rescheduled for October 16, 2013. The parties also agreed that Dr. Mason would provide a written report to the parties, court, and GAL by October 2, 2013. A copy of Dr. Mason's preliminary report was filed on October 2,

---

[3] The record does not indicate what happened with respect to this particular appeal.

2013, together with a motion asking the court to compel Jenise to provide the children to Dr. Mason so that he could finalize his report. The trial court denied the request on October 8, 2013, noting that no specific dates for appointments had been submitted, other than the dates in August 2013 that had passed prior to the filing of the first motion to compel. At trial, the court allowed Dr. Mason to testify, but refused to qualify him as an expert witness on alienation.

{¶ 17} After hearing the evidence, the trial court filed an entry finding no change in circumstances, and denying Brian's motion to reallocate parental rights and responsibilities. The court also held Jenise in contempt of court for denying visitation between September 9, 2011 and November 23, 2011. The court sentenced Jenise to a $500 fine and ten days in jail, but suspended the jail time so long as Brian was given six additional weeks of parenting time between the date of the entry and April 30, 2014.

{¶ 18} Brian appeals from the judgment denying his motion to reallocate parental rights and responsibilities.

## II. Failure to Recuse

{¶ 19} Brian's First Assignment of Error states that:

The Trial Court Erred by Failing to Recuse Herself From the Trial Due to a Conflict of Interest.

{¶ 20} Under this assignment of error, Brian contends that the trial judge should have recused herself due to the pendency of a federal lawsuit in which she was at risk of suffering money damages. Brian also argues that the trial judge demonstrated a clear bias against him by her rulings and demeanor, including a refusal to recognize Brian's witness as an expert, the

judge's antagonistic tone of voice, a threat of arrest made to Brian's counsel, and the reading of a settlement offer into the record. Before addressing this argument, we note that Jenise failed to file an appellate brief, and, thus, has not responded to any of Brian's assignments of error.

{¶ 21} In *Owais v. Costandinidis*, 2d Dist. Greene No. 2014-CA-5, 2014-Ohio-4103, we noted in a similar situation that:

> We are without authority to address the issue of the trial court's alleged bias against [Appellant], as her remedy would be the filing of an affidavit with the Supreme Court of Ohio. *Callison v. DuPuy*, 2d Dist. Miami No.2002 CA 52, 2003-Ohio-3032, ¶ 22, citing R.C. 2701.03. "Pursuant to this procedure, the Chief Justice of the Ohio Supreme Court or his designee determines whether the judge is biased or prejudiced." *Id.*, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978), and Article IV, Section 5(C), Ohio Constitution. "This is 'the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced.' " *Id.*, quoting *Jones v. Billingham*, 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2d Dist.1995). *Accord State v. Cook*, 2d Dist. Champaign No. 2013 CA 22, 2014-Ohio-3165, ¶ 15.

*Owais* at ¶ 70.

{¶ 22} In the case before us, Brian availed himself of that remedy at least twice, and the Supreme Court of Ohio failed to find a basis for disqualifying the trial judge. However, even if we were to consider Brian's challenge, we would find it without merit.

{¶ 23} "Judicial bias is ' "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory

judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." ' " *Weiner v. Kwait*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 89, quoting *State v. LaMar*, 95 Ohio St.3d 181, 189, 767 N.E.2d 166 (2002). "Trial judges are ' "presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." ' " *Id.* at ¶ 90, quoting *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340, 755 N.E.2d 906 (10th Dist. 2000). "In *Eller*, the court also noted that ' "[t]he existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." ' " *Id.*

{¶ 24} For purposes of assessing this issue, we have reviewed the entirety of the docket and transcript. There is no doubt that this was a bitterly contested matter, and the trial court was required to deal with voluminous motions filed by both parties – some of which had merit, and others that did not. At times during the five days of evidentiary hearings, the trial court expressed frustration with Brian's counsel, but the record indicates that counsel was, at times, ill-prepared and was confused about exhibits, despite the court's attempts to assist counsel and clarify the record. *See, e.g.*, Trial Transcript, Vol. VI (Oct. 13, 2013), pp. 808-810.

{¶ 25} As an additional matter, the federal lawsuit was dismissed well in advance of trial, and there is no indication in the record that the trial judge was influenced by the fact that Brian had sued her and others, including another Champaign County Juvenile Judge and various Champaign County entities. *See [K.]*, S.D. Ohio No. 3:12-CV-95, 2012 WL 2871623 (July 12, 2012), at * 1.

{¶ 26}   Furthermore, with respect to the court's alleged threat to arrest Brian's counsel, the record indicates that counsel was disrespectful to the judge, who responded by stating that she would call a deputy if counsel pointed his pen at her anymore.   Trial Transcript, Vol. II (Aug. 26, 2013), p. 363.   The trial court could perhaps have been less officious in general during its conduct of the trial, but the court's duty to maintain order may have required assertive conduct given the nature of these very contentious proceedings.   It is difficult to measure from the record whether a lesser level of control would have sufficed.

{¶ 27}   Finally, with regard to settlement offers, we note that, at the end of the evidentiary hearing, the trial court placed on the record the fact that Jenise had offered shared parenting, but the offer had been rejected by Brian.   The basis for admitting this fact was the court's belief that "The Supreme Court of Ohio has been – and appellate courts in Ohio have been becoming very, very strict about making sure the parties know what is offered in the way of a plea or settlement."   Trial Transcript, Vol. VI (Oct. 13, 2013), p. 899.

{¶ 28}   The trial court did not cite any cases for this proposition.   This may be true in criminal cases, but it is not true in civil cases.   In this regard, Evid.R. 408 provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.   Evidence of conduct or statements made in compromise negotiations is likewise not admissible.   This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the

course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

**{¶ 29}** In *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, the defendant argued that the trial court had erred in admitting letters from his counsel that contained offers to compromise. *Id.* at ¶ 54. The trial court allowed certain parts of the letters to be admitted, but stated that references to compromise would be "redacted and excluded." *Id.* at ¶ 59. In this regard, the court of appeals found no error in the admission, stating that:

> Counsel for the parties had the opportunity to confer about what parts of these exhibits should be redacted, and anything that would be prohibited by Evid.R. 408 was redacted. Evidence Rule 408 states, "This rule also does not require exclusion when the evidence is offered for another purpose * * *." It would appear that the information contained in those exhibits was already before the trial court, and the purpose in admitting them was to demonstrate the difficulties in communications and working out shared parenting time that existed between the parties; there was no discussion of "compromise" or "settlement" that was not redacted. The trial court did not abuse its discretion concerning the admission of these exhibits.

*Id.*

**{¶ 30}** As another example, the Tenth District Court of Appeals concluded that admission of a proposed settlement agreement did not violate Evid.R. 408 where the evidence

was introduced to prove the appropriate venue, and was not admitted for purposes of the validity or invalidity of the other party's claim. *Swearingen v. Swearingen*, 10th Dist. Franklin No. 06AP-698, 2007-Ohio-1241, ¶ 15.

**{¶ 31}** We have also observed that:

> The reason for excluding this type of evidence is that parties may offer to compromise based on factors besides potential liability. Additionally, the rule is designed to encourage settlement of disputes. *Fireman's Fund Ins. Co. v. BPS Co.* (1985), 23 Ohio App.3d 56, 62, 23 OBR 101, 106-107, 491 N.E.2d 365, 372. However, as the defendants point out, the rule makes an exception when evidence is offered for another purpose, such as showing witness bias. As an example, we have approved admission of a settlement proposal where it was offered to show a lack of malice on the defendants' part. *Hignite v. Trout* (Apr. 28, 1989), Greene App. No. 88CA5, unreported, at 14, 1989 WL 43035.

*Schafer v. RMS Realty*, 138 Ohio App.3d 244, 295, 741 N.E.2d 155 (2d Dist.2000).

**{¶ 32}** In *Shafer*, we concluded that the defendants were entitled to admit evidence of offers to compromise because their motives were at issue. *Id.* However, in the case before us, the trial court was not admitting evidence for some other purpose, nor was it, in fact, admitting evidence at all. The court was reciting terms of a settlement offer after the close of evidence, which would not be appropriate. However, neither party objected at the trial court level, and the error, if any, was harmless. The trial court was obviously aware of the settlement proposal, whether it mentioned the offer on the record or not, and there is, again, no indication in the record that the court's decision was influenced by the offer.

**{¶ 33}** Accordingly, the First Assignment of Error is overruled.

### III. Change of Circumstances

**{¶ 34}** Brian's Second Assignment of Error states that:

The Trial [Court] Erred in Finding that No Change of Circumstance Had Occurred.

**{¶ 35}** Under this assignment of error, Brian contends that the trial court should have found a change in circumstances justifying modification of custody, based on various events, including C.K.'s rebellious behavior, depression, and absence from her mother's home; allegations of abuse that, again, have not been substantiated; barely adequate living conditions in Jenise's home; and Jenise's continued failure to honor court-ordered visitation.

**{¶ 36}** In order to prevail on a motion for reallocation of parental rights and responsibilities, the movant must establish: "(1) there had been a change in the circumstances of [the child or the current custodian], (2) modification of the existing custody decree was necessary to serve [the child's] best interest, and (3) the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to [the child]." *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012-Ohio-626, ¶ 10, citing R.C. 3109.04(E)(1)(a). "[T]here must be a *change* of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." (Emphasis sic.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). In this regard, the Supreme Court of Ohio has also stressed that:

In determining whether a "change" has occurred, we are mindful that

custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion.

(Citation omitted.)  *Id.*

**{¶ 37}**    In rejecting Brian's motion for reallocation of parental rights, the trial court concluded that no change in circumstances had occurred "in the children or the residential parent and no facts have arisen that are new or were unknown to the Court at the time of the prior February 9, 2009 Magistrate's Decision and Order and the Court's Judgment and Order adopting the Magistrate's Decision and Orders dated July 24, 2009."   Full Evidentiary Hearing Decision, Doc. #199, p. 2.   In particular, the court noted that the mother and children still lived at the same residence, the children attended the same school, and the children, while older, still expressed a desire to live with their mother.  *Id.* at p. 2.   In addition, the court observed that:

The parents have continued to have a contentious relationship, each pulling the children in a different direction and the allegations of abuse are still a topic but there have been no new allegations.  This is nothing new.  The Court has been involved with the family since 2007 and the issues presented never change.  Even Dr. Mason testified that his impressions and evaluation of both parents are still very consistent with the psychological evaluation conducted prior to 2009.

Even in considering the possibility of alienation, the Court specifically addressed this issue in 2009 and found that "both parents have taken actions that would alienate the other parent from the children."   The Court does not find that

either parent has acted differently in the interim, and therefore, there are no new facts or a change in circumstances based on this proposition.

*Id.* at p. 3.

{¶ 38} Brian argues that the court's opinion is contradictory in view of the fact that the court suspended his visitation in November 2011, after interviewing the children in-camera. He contends that some "new" information must have been disclosed for this to happen.

{¶ 39} A transcript of the in-camera interview has not been submitted with the record, and we, therefore, have no idea what the children said to the trial court.[4] In this regard, we note that the attorney for the children (not Jenise's attorney) filed a motion in October 2011, asking the trial court to modify Brian's visitation with the children, based on the children's contention that Brian was abusive, both mentally and physically. The court then scheduled an in-camera interview with the children, and after conducting the interview, suspended Brian's visitation on November 29, 2011.

{¶ 40} The fact that Brian's visitation was suspended after the trial court talked to the children does not mean that a change in circumstances favoring Brian's request for custody had occurred; in fact, it indicates the reverse. Furthermore, the in-camera interview in question was not conducted in connection with the motion for reallocation of parental rights; it was conducted in connection with a motion filed by the attorney for the minor children, asking that the court

---

[4] In-camera interviews of children are confidential and are not disclosed to parents. However, appellate courts can review sealed transcripts of interviews. *See, e.g., Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878, ¶ 26 (12th Dist.). Although Brian asked that the trial court release the transcript to him (and the request was properly refused), he did not raise the court's failure to file a sealed transcript in the trial court. Under the circumstances, any potential error in this regard has been waived. *See, e.g., Moline v. Moline*, 11th Dist. Ashtabula No. 2009-A-0013, 2010-Ohio-1799, ¶ 54, holding that "failure to object to an error constitutes a waiver of the issue on appeal since it denies the trial judge the opportunity of correcting the error."

suspend visitation with the father.

{¶ 41}    Brian further argues that events such as C.K.'s depression, failure to reside full-time with her mother, and out-of-control behavior resulting in C.K. being taken to a police station, constitute a change in circumstances warranting a change in custody.    We disagree. According to the record, allegations of sexual abuse of C.K. by Brian first surfaced in late 2007, during the initial custody proceedings involving Jenise and Brian.    *See A.K. I*, 2d Dist. Champaign No. 09-CA-32, 2010-Ohio-2913, at ¶ 12.    Brian's visitation was temporarily discontinued, but was restored after investigating agencies found that the sexual abuse allegations were unfounded.    *Id.* at ¶ 13.    Our prior decision affirming the award of custody to Jenise, stated that "[t]he trial court and magistrate acted appropriately, because the evidence failed to establish that either parent acted improperly in connection with the alleged sexual abuse."    *Id.* at ¶ 44.

{¶ 42}    Another sexual abuse investigation occurred in July 2011, according to Jenise, as the result of a home visit done by an individual who was a mandated reporter in Hardin County, where Jenise lived.    After examining the records of Hardin County Children Services during the trial proceedings, the trial court informed the parties that the referral to Children Services was not made by Jenise, but was made by another individual, whose name was kept confidential, as required by law.    The trial court also stated that nothing new was in the records that had not previously been placed on the record with the court.[5]

{¶ 43}    After the abuse investigation was initiated, Jenise did not provide the children

---

[5]    The trial court made these comments when granting a motion to quash filed by Hardin County Children Services regarding its investigation of the abuse allegations in July 2011.

for visitation with Brian. Around September 6, 2011, Children Services notified Brian that the case was being closed, as the allegations were considered unsubstantiated. The trial court ultimately held that Jenise acted appropriately in withholding visitation during the investigation. However, the court also found Jenise in contempt for failing to provide visitation between September 6, 2011, and November 23, 2011, when the court suspended visitation based on the request of the children's attorney and the in-camera interview. The children testified in court that their mother did not have anything to do with their request to suspend visitation.

{¶ 44} "An abuse of discretion means that the trial court's decision is unreasonable, arbitrary or unconscionable." *Miller v. Remusat*, 2d Dist. Miami No. 07-CA-20, 2008–Ohio–2558, ¶ 32, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 45} Based on this standard, the trial court did not act unreasonably in refusing to find a change of circumstances due to the occurrence of another investigation for sexual abuse. The record indicates that Jenise did not initiate the abuse investigation, and while the allegations were classified as unsubstantiated, that does not necessarily mean that the allegations, in fact, were untrue or that the person reporting the allegations had anything other than a duty to report an issue to the appropriate agency. In this regard, Dr. Mason, Brian's expert, indicated that C.K. clearly believed something had happened with her father. This could have been the result of an original implant of a false suggestion or a child's misinterpretation of an event, as suggested by Dr. Mason, but it could also have been the result of an actual act of abuse. While Dr. Mason stated that no one, including C.K., told him about sexual abuse that had occurred in the last year or two, this does not mean that C.K. would also automatically forget about what she believed had

happened in the past, or that she might not mention it to others.

{¶ 46}    Furthermore, although C.K. displayed signs of depression and stated that she could "choose to live or die," the trial court did not act unreasonably in failing to find a change of circumstances.   The testimony of the parties, as well as C.K., indicates that C.K. was uncomfortable staying overnight in her father's house. On June 13, 2013, after a period of successful daytime visitations, the trial court ordered that Brian be permitted visitation with the children every other weekend, from Saturday at 10:00 a.m. until Sunday at 5:00 p.m.

{¶ 47}    Jenise testified that C.K.'s behavior had changed after visitation with Brian was ordered – that C.K. acted out more and was more out of control.   On July 22, 2013, Jenise and C.K. had an argument, during which Jenise threatened to make C.K. go live with her father if her attitude did not improve.   According to Jenise, the confrontation took place because Brian kept telling C.K. that she did not have any right to make choices for herself, that C.K. could only do what the court said and what Brian said.   During this argument, C.K. stated that she had a choice, that she could choose to live or to die.   Jenise then took C.K. to the police station because she was concerned that C.K. was suicidal.   As a result of advice received at the police station, Jenise then took C.K. to St. Rita's Hospital, where C.K. was diagnosed with depression and released the same evening.

{¶ 48}    This set of events does not indicate that C.K.'s behavior worsened because of her mother.   A reasonable inference is that C.K. was upset because she did not want to stay overnight at her father's house – a not unexpected reaction if C.K. believed that she had been abused in the past.[6]

---

[6]    In fact, C.K. testified that this is why she did not want to stay overnight at her father's house.

**{¶ 49}**    Again – whether this actually happened or was something that may have become an honestly-held belief of C.K.'s, based on her history of having lived with the allegations for so long – would basically have been irrelevant at that point.   Although Jenise likely did not use the best judgment in threatening to send C.K. to live with her father, the history of this case shows an abundance of questionable judgment on the part of all the adults who were involved.   For example, Brian's fiancee admitted during testimony that she had threatened to break C.K.'s neck several years prior when C.K. was acting out.   Brian also hit Z.K., the youngest child, in the mouth on the weekend before trial began on August 26, 2013.   Both A.K. and Z.K. indicated that their parents had called each other names and said bad things about the other parent.   As we noted in our prior decision in 2010, "[t]he case before us presents yet another example of parents who focus more on fighting with each other than on how their behavior affects their children. * * * Brian and Jenise have never been married, but they have used their children as weapons during a prolonged and bitter custody fight."   *A.K. I,*, 2d Dist. Champaign No. 09-CA-32, 2010-Ohio-2913, at ¶ 2.   The magistrate who heard the evidence at that point observed that "neither parent had been able to acknowledge anything positive about the other, and that each parent had taken actions that would alienate the children from the other parent."   *Id.* at ¶ 32. From this perspective, nothing has changed in the parties' circumstances.

**{¶ 50}**    With respect to the living conditions at Jenise's house, the GAL did indicate that they were "barely adequate."   However, Jenise had lived at that home for at least five years prior to a report the GAL made in December 2012.   See Plaintiff's Ex. 21, p. 3.   Therefore, there would have been no change in living conditions since the trial court's original custody decision in July 2009.   At the time of the custody hearings, the children were all doing well in school and

there was no evidence that they had any discipline or other problems in school.

{¶ 51} Finally, regarding the allegation that C.K. was not living with her mother, C.K. testified in late August 2013 that she had been staying with her brother during week nights, while her mother was working. Jenise worked a second-shift job and had been unable to secure a different shift. On week nights, C.K. stayed with a baby-sitter or her brother. However, Jenise testified in late October 2013 that this practice no longer continued; that sometimes C.K. stayed overnight with her brother, who would then drop her off in the morning. Most of the time, Jenise picked up C.K. on her way home from work. In addition, Jenise's older son, Jason, had moved in and was available in the evenings.

{¶ 52} The trial court was in the best position to judge credibility, and was entitled to credit Jenise's testimony that C.K. was not staying permanently at her brother's house. As the Supreme Court of Ohio has stressed, "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." (Citation omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). *Accord Hutchinson v. Hutchinson*, 2d Dist. Montgomery No. 26221, 2014-Ohio-4604, ¶ 30.

{¶ 53} Based on the preceding discussion, the trial court did not err in failing to find that a change of circumstances had occurred sufficient to justify a change of custody under R.C. 3109.04(E)(1)(a). As was noted, nothing of substance changed in the circumstances and conduct of the parties. Their relationship, while dysfunctional and at times harmful to their children, had

not changed.

**{¶ 54}**  Accordingly, the Second Assignment of Error is overruled.

## IV.  In-Camera Review

**{¶ 55}**  Brian's Third Assignment of Error states that:

> The Trial Court Erred in Conducting an In-camera Interview Excluding Attorneys From the Interview and Refusing to Permit Counsel for Appellant to Review the Transcript of the Interview.

**{¶ 56}**  Under this assignment of error, Brian contends that the trial court erred in interviewing the minor children in-camera and by refusing to permit Brian's attorney to review the transcript of the interview.

**{¶ 57}**  The trial court interviewed the children in-camera on August 8, 2013, prior to the custody hearings, at the request of the children's attorney.  The court then refused to allow Brian's attorney to review a transcript of the interview.  Previously, the trial court had interviewed the children in-camera in connection with their attorney's request to suspend visitation, and had denied Brian's request for a copy of that interview to be released to his attorney as well.  See Trial Court Entries of October 11, 2012 and November 27, 2012.  According to Brian, these refusals denied his right to confront witnesses under the Sixth Amendment of the United States Constitution.

**{¶ 58}**  Under R.C. 3109.051(C), in-camera interviews are discretionary when the court considers issues relating to parenting time.  They are required, upon the request of either party, when a court is considering the allocation or modification of parental rights and responsibilities

under R.C. 3109.04(B)(1). *Mangan v. Mangan*, 2d Dist. Greene No. 07-CA-100, 2008-Ohio-3622, ¶ 21.

{¶ 59}   Both in-camera requests were made in connection with motions to suspend or restrict Brian's parenting time, not in connection with the allocation of parental rights and responsibilities.   Thus, the relevance of the interviews to the issue being appealed, i.e., the decision on modification of parental rights, is questionable.   Nonetheless, in-camera interviews are confidential, and the parents do not have the right to access transcripts of the interview.   *See, e.g.*, *Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878, 885, at ¶ 26, and *Chapman v. Chapman*, 2d Dist. Montgomery No. 21652, 2007-Ohio-2968, ¶ 27.

{¶ 60}   Because Brian did not have a right to review the transcripts of the in-camera interviews, the Third Assignment of Error is overruled.

V.   Exclusion of a Witness

{¶ 61}   Brian's Fourth Assignment of Error states that:

The Trial Court Abused Her Discretion in Excluding Dr. Mason as Appellant's Expert Witness.

{¶ 62}   Under this assignment of error, Brian contends that the trial court erred in excluding Dr. Mason as an expert in alienation.   As was noted above, Dr. Mason rendered only a preliminary evaluation, due to the fact that he was not able to conduct sufficient visits with the children.   Brian has not assigned error on appeal to the court's denial of a request for additional visits, but he does argue that the court erred in failing to accept Dr. Mason's qualifications as an expert in alienation.

**{¶ 63}** A decision "whether a given witness is qualified to testify as an expert falls within the sound discretion of the trial court and will not be reversed on appeal unless an abuse of discretion is demonstrated." *State v. Harris*, 2d Dist. Clark No. 94 CA 37, 1995 WL 614348, * 4 (Oct. 18, 1995), citing *State v. Maupin*, 42 Ohio St.2d 473, 479, 330 N.E.2d 70871 (1975). (Other citations omitted.)

**{¶ 64}** " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶ 65}** After reviewing the record, we conclude that the trial court's decision to exclude Dr. Mason as an expert in alienation was not supported by sound reasoning. Dr. Mason was a licensed psychologist who had been practicing for many years, had done many custodial evaluations, and had testified over 100 times. According to Dr. Mason, in addition to the matters listed in his curriculum vitae, he had taken classes in alienation during his last six continuing education cycles. Dr. Mason also testified that he had been qualified as an expert in both psychological evaluation and in alienation by other courts in central Ohio.

**{¶ 66}** In rejecting the request to qualify Dr. Mason as an expert in the area of alienation, the trial court stated that:

> The Court does not believe there's sufficient foundation to qualify this individual as an expert in alienation. I would concur that his CV is extensive as far as a licensed psychologist and his skills and expertise with adolescents and families, but the Court does not believe there's sufficient foundation to qualify him as an expert specifically in alienation.

Trial Transcript, Vol. VI (Oct.13, 2013), p. 779.

**{¶ 67}** Although we are limited to an abuse of discretion review, it is unclear what more must have been done to qualify the doctor as an expert. The fact that other courts had qualified Dr. Mason as an expert in this area is not dispositive, but in the absence of some specific indication from the trial court regarding why Dr. Mason failed to qualify, we cannot conclude that the trial court's exclusion was reasonable.

**{¶ 68}** Nonetheless, even though the trial court erred in this regard, the error was harmless. "An error is harmless where it does not affect substantial rights of the complaining party, or where the court's action is not inconsistent with substantial justice." *Hofmeier v. Cincinnati Institute of Plastic & Reconstructive Surgery, Inc*, 1st Dist. Hamilton No. C-000274, 2002 WL 63432, * 3 (Jan. 18, 2002), citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164, 407 N.E.2d 490 (1980). (Other citations omitted.)

**{¶ 69}** Specifically, although the trial court refused to qualify Dr. Mason as an alienation expert, the court did permit Dr. Mason to testify regarding various identifiers that are recognized by people working in the parental alienation area. These factors included: permitting

a child to choose whether or not to visit a parent; blaming an ex-spouse for not having enough money, causing changes in lifestyles, or causing other problems while in the children's presence; assuming an ex-spouse is dangerous due to threats in the past during an argument; false allegations of sex abuse, drug abuse, and alcohol abuse or other illegal activities of a parent; and a child's refusal to spend time with a targeted parent.

{¶ 70}    In view of Dr. Mason's recitation of these factors, the trial court had the ability to conclude, as the trier of fact, whether the children had been alienated.   What the court determined was that the parents "had continued to have a contentious relationship, each pulling the children in a different direction," and that the issues presented had never changed since the court's first involvement with the family in 2007.   Full Evidentiary Hearing Decision, Doc. #199, p. 3.   The trial court's decision in this regard is supported by the record.

{¶ 71}    Furthermore, Dr. Mason stated that he was unable to hypothesize if the alienating factors had occurred in this particular case, because he had not finished his evaluation. Trial Transcript, Vol. VI (Oct. 13, 2013), at p. 825.   As was noted, Brian has not raised Dr. Mason's inability to finish his evaluation on appeal.

{¶ 72}    Based on the preceding discussion, the Fourth Assignment of Error is overruled.


VI.   Restriction of Evidence

{¶ 73}    Brian's Fifth Assignment of Error states as follows:

The Trial Court Erred in Prohibiting Evidence Prior to May 2011.

{¶ 74}    Under this assignment of error, Brian contends that the trial court erred in ruling that no evidence would be permitted regarding time periods prior to May 23, 2011.   The trial

court made this comment in an entry filed on April 12, 2012. The basis for the court's ruling was that "[a]ll issues prior to May 23, 2011, were litigated at various levels and were previously decided at the trial and appellate levels." Evidentiary Hearing Decision, Doc. #73, p. 2.

{¶ 75} Brian filed his motion for change of custody based on denial and interference with visitation and a campaign of alienation, on May 11, 2011. In late February 2011, the trial court placed the motion for change of custody on its inactive docket, in view of the fact that the same issues were currently before the court of appeals. After we issued an opinion in September 2011, affirming the denial of Brian's Civ.R. 60(B) motion for relief from judgment, the trial court returned the custody motion to its active docket. *See A.K. II*, 2d Dist. Champaign No. 2011 CA 4, 2011-Ohio-4536.

{¶ 76} Brian notes that the last custody decision was rendered on February 9, 2011, and that limiting the evidence to events after May 23, 2011, improperly restricted his ability to address the severity of his children's alienation. However, we disagree.

{¶ 77} R.C. 3104.09(E)(1)(a) states that a court "shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."

{¶ 78} The prior decree in this case was entered in late July 2009. *A.K. II* at ¶ 3. As a result, the trial court could have considered events occurring after that date, including events that occurred prior to February 11, 2011, i.e., the date upon which Brian filed the motion to reallocate

parental rights and responsibilities. The question is whether the trial court abused its discretion by failing to hear evidence relating to that time period. As was noted, an abuse of discretion requires that the trial court has acted arbitrarily, unreasonably, and unconscionably. *AAAA Ents., Inc.*, 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 79} Under the circumstances of this case, we cannot conclude that the trial court abused its discretion. We have reviewed the entire record, including the docket, exhibits and transcripts of the proceedings. We note that the trial court was well aware of the background and events in this case, having been involved with the parties since 2007. In addition, the court held an evidentiary hearing in May 2011, which addressed issues pertaining to visitation problems and a contempt motion filed by Brian in December 2010. See *A.K. III*, 2d Dist. Champaign No. 2011 CA 15, 2012-Ohio-412, at ¶ 3-5.

{¶ 80} During the evidentiary hearings on the motion for reallocation of parental rights, which were held in August and October 2013, the parties also did present some evidence related to events occurring before May 2011, and even before February 2011. Moreover, the GAL reports included events that occurred prior to February 2011, including Brian's allegation that he had been investigated twelve times for sexual abuse, without the allegations having been found to be substantiated. *See, e.g.*, Plaintiff's Ex. 21, p. 4. Brian additionally testified to this fact during his testimony at the parental rights hearing. And finally, more than two years elapsed between the time the motion was filed and the final hearing was held in October 2013 - during which the trial court held many hearings and resolved many issues between the parties.

{¶ 81} The trial court's decision was not made in a vacuum, and the court did not act unreasonably in restricting its consideration to the more recent events surrounding the motion for

reallocation of parental rights. As a result, the Fifth Assignment of Error is without merit, and is overruled.

## VII. Use of an Independent Stenographer

**{¶ 82}** Brian's Sixth Assignment of Error states that:

The Trial Court Erred in Failing to Permit Appellant to Independently Have a Licensed Stenographer Record the Proceeding (Excluding Appellant).

**{¶ 83}** Under this assignment of error, Brian contends that he retained an independent court stenographer on June 10, 2013, to record the hearing at counsel's table, for the purpose of allowing Brian to have a speedy review of the court proceedings. Brian contends that the trial court abused its discretion by denying him the ability to use a private stenographer.

**{¶ 84}** Our review of the record does not show any request for a private stenographer to be present at court proceedings. On the first day of the hearings, Brian's counsel requested permission to have his legal assistant in court to assist with documents, and the trial court granted the request. Trial Transcript, Vol. I (Aug. 26, 2013), pp. 9-11. At that point, Jenise's counsel asked if the legal assistant were going to be recording or taking a transcription, and Brian's counsel stated that she would not be doing so. *Id*. at p. 11. Brian's counsel then indicated that he intended to make an audio recording, but the court rejected that request, based on Juv.R. 37.

**{¶ 85}** Juv.R. 37(A) provides that:

The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings

governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device.

{¶ 86} "It is within the sound discretion of the juvenile court judge to determine which method shall be used." *In the Matter of Glenn*, 8th Dist. Cuyahoga No. 35352, 1977 WL 201117, * 1 (Jan. 20, 1977). In the case before us, the trial court provided a court reporter, who later transcribed the proceedings for purposes of appeal. The court was not required to permit a party to bring in his or her own stenographer, nor was the court required to allow a party to use his or her own recording device. This would potentially run afoul of Juv.R. 37(B), which prohibits any public use of juvenile court records, including recordings or transcripts of proceedings, "except in the course of an appeal or as authorized by order of the court or by statute."

{¶ 87} Accordingly, the Sixth Assignment of Error is overruled.

VIII.   Manifest Weight Challenge

{¶ 88} Brian's Seventh Assignment of Error states that:

The Trial Court's Decision Was Against the Manifest Weight of the Evidence.

{¶ 89} Under this assignment of error, Brian contends that the evidence at trial overwhelmingly supports the conclusion that Jenise has engaged in a systematic denial of his companionship rights. Brian further contends that the trial court has ignored his requests for protection of his right to his children, and has instead suspended his visitation on two separate

occasions, with the most recent occasion being between November 23, 2011 and December 22, 2012. According to Brian, the trial court's custody decision, while accorded great deference, was a decision based on passion or bias.

**{¶ 90}** "The weight of the evidence concerns ' "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." ' (Emphasis sic.)" *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 15, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. (Other citations omitted.) "In a review of the manifest weight of the evidence, 'every reasonable presumption must be made in favor of the judgment and the finding of facts.' " *Id.*, quoting *Volkman* at ¶ 21. " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *.' " *Volkman* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, which in turn quotes 5 *Ohio Jurisprudence* 3d, Appellate Review, Section 60, at 191-192 (1978).

**{¶ 91}** After reviewing the entirety of the evidence, we conclude that the judgment was not against the weight of the evidence. In previously discussing the evidence as to the alleged change in circumstances, we concluded that the trial court did not err in concluding that no sufficient change of circumstances had occurred. For the same reasons, we conclude that the trial court's decision was not against the manifest weight of the evidence. The trial court, as the fact-finder, was in the best position to judge credibility. *Miller*, 37 Ohio St.3d at 74, 523 N.E.2d 846. "This is not the exceptional case in which the evidence weighs heavily against the judgment of the trial court, creating a manifest injustice." *Crawford v. Hawes*, 2013-Ohio-3173,

995 N.E.2d 966, ¶ 39 (2d Dist.)

{¶ 92}   Based on the preceding discussion, the Seventh Assignment of Error is overruled.

{¶ 93}   As a final matter, we note that under App.R. 18(C):

> If an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action.

{¶ 94}   As was noted, Jenise failed to file a brief.  Nonetheless, the final provisions of App.R.18(C) are permissive.  If the appellee fails to file a brief, we "may" deem the appellant's facts to be correct.  But, we are not required to do so.  We can review the record to see if the appellant's version of the facts is correct, and in cases involving parental rights, this is an appropriate procedure.  After a review of the record, and a comparison of the facts with those recited in Brian's brief, we conclude that Brian's brief does not reasonably appear to sustain reversal of the trial court judgment.

## VIII.   Conclusion

{¶ 95}   All of Brian's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.


Copies mailed to:

Michael Edwards
Brian K.
Jacob Jeffries
Jenise B.
Hon. Lori L. Reisinger